**Pamela Dianne Lomax COHEN, Plaintiff,**

v.

**Jay Steven COHEN, Defendant.**

Supreme Court of Tennessee, at Nashville.

Sept. 16, 1996.

Vance Cramb, Jr., Nashville, for Plaintiff.

Fred C. Dance, Dance, Dance & Lane, Nashville, for Defendant.

## OPINION

WHITE, Justice.

■ This divorce case raises two important questions involving the classification of marital property under our statutes. The first question is whether an interest in an unvested retirement plan is marital property. The second question is whether increased equity in separate real property is martial property. The trial court declined to consider the husband's interest in an unvested retirement plan as marital property, but did conclude that the increased equity in the husband's separate real property was marital property subject to division. The Court of Appeals reversed on both counts. We granted permission to appeal to determine whether the legislature's definition of marital property set forth in Tennessee Code Annotated Section 36–4–121(b)(1) includes either unvested retirement plans or increased equity in separate real property. We hold that the value of unvested retirement plans and increased equity in real separate property accruing during the marriage constitute marital property. Accordingly, we affirm in part and reverse in part the judgment of the Court of Appeals.[1]

---

1. Both husband and wife appealed as of right to the Court of Appeals and raised a total of seven issues. Since we granted permission to appeal only on the marital property issues, this opinion does not affect the other portions of the Court of Appeals' judgment.

## I.

Prior to his marriage to Pamela Cohen on September 1, 1982, Jay Cohen purchased a house for $75,000 from his aunt.[2] After the marriage, as a gift to Pamela Cohen, her family made improvements to the house valued at $10,000.

During the parties' marriage, Mr. Cohen was employed by Nashville Metropolitan Fire Department as a paramedic.[3] In April, 1987, the department began making monthly contributions to the retirement plan on Cohen's behalf.

In January, 1992, Mrs. Cohen filed for divorce. Mr. Cohen counterclaimed. The amended final decree of divorce, entered on August 11, 1993, awarded the wife an absolute divorce and sole custody of the child. It also divided the couple's personalty and other assets. As to the marital residence, the decree ordered that the residence be sold with each party paying half of the monthly payments until the sale. The trial court extended credit as gifts to the husband for $25,000 and to the wife for $10,000 upon the sale of the home. The remaining equity was to be divided equally. The trial court declined to award the wife any interest in the husband's unvested retirement benefits.

The Court of Appeals reversed the trial court on both issues. The appeals court held that the wife was not entitled to a division of the equity in the real property because she had not made a substantial contribution to its increase. Conversely, the intermediate court held that the unvested retirement benefits which had accrued during the course of the marriage was marital property. The case was remanded the case to the trial court for valuation of the retirement account and a determination of the most appropriate method of division and distribution.

We granted permission to appeal to review these two determinations. We conclude that Tennessee Code Annotated Section 36–4–121 contemplates that both the unvested retire-ment benefits and the increased equity in the real property be considered marital property.

## II.

### Unvested Retirement Benefits

Prior to determining whether unvested retirement benefits are marital property under our statute, we will review the concepts. An employee has a "vested" retirement right when the employee has completed the requisite term of employment necessary to be entitled to receive retirement benefits at some future time. *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 635, 544 P.2d 561, 563 (1976); *In re Marriage of Grubb*, 745 P.2d 661, 665 (Colo. 1987); *Grode v. Grode*, 543 N.W.2d 795, 801 (S.D.1996); G. Blumberg, *Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement, Analysis*, 33 UCLA L.Rev. 1250, 1259 (1986). A "vested" right matures when an employee reaches retirement age and elects to retire. *In re Marriage of Grubb*, 745 P.2d at 665. Frequently, vested, but immature rights, are conditioned upon the employee reaching retirement age. *In re Marriage of Brown*, 126 Cal.Rptr. at 635, 544 P.2d at 563. An "unvested" retirement account is one in which the time period requirements have not been fulfilled. *Grode v. Grode*, 543 N.W.2d at 802.

Our analysis begins with Tennessee Code Annotated Section 36–4–121 which defines marital and separate property:

(b)(1)(A) "Marital Property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the

---

2. The house had belonged to Mr. Cohen's deceased grandmother. Mr. Cohen's father and his sister had an interest in the house, with his sister having the greater share. The father gave his share equaling $22,500 to his son. Cohen paid $2,500 to his aunt, and the aunt carried the mortgage for the remaining $50,000.

3. The record does not specify when Mr. Cohen began his employment with the fire department.

date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

(B) "Marital property" includes income from, and any increase in value during the marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

. . .

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage:

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

Tenn.Code Ann. § 36–4–121(b)(1)(A), (B) & (2) (1991 Repl.).

First, we must determine whether the right to an unvested retirement benefit fits within the statutory definition of marital property. In construing statutes, we look to the plain language and give effect to the ordinary meaning of the words. Marital property, under our law, includes *"all"* property "acquired ... during the course of the marriage" or to which "a right was acquired up to the date of the final divorce hearing." Tenn.Code Ann. § 36–4–121(b)(1)(A) (1991 Repl.) (emphasis added). Property is generally understood to include anything of value. *See generally* Black's Law Dictionary 1095 (5th ed. 1979). Under that unambiguous language, clearly the right to unvested retirement benefits is marital property.

Our inquiry, however, does not end there. We must consider statutes in pari materia, not in a vacuum. Thus, it is argued that further descriptions of marital property in the statute exclude unvested retirement benefits. Specifically, Mr. Cohen contends that the plain language of subsection (B) which specifically identifies vested pension benefits as marital property impliedly excludes unvested retirement benefits. Tenn.Code Ann. § 36–4–121(B) (1991 Repl.) ("and the value of vested pension, retirement or other fringe benefit rights ....")

Unlike subsection (A) the language of which is plain and unambiguous, subsection (B) is not without ambiguity. It is not at all clear whether the adjective "vested" in the phrase "vested pension, retirement or other fringe benefit rights" modifies "retirement" or "other fringe benefit" or only "pension." Further, if the term "vested" is interpreted to modify each of the three, the question remains whether the inclusion of the phrase operates to exclude unvested retirement benefits included under the broad definition set forth in subsection (A).

When the language of a statute is ambiguous, this Court's role is to determine and to "give effect to the legislative's intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Wilson v. Johnson County,* 879 S.W.2d 807, 809 (Tenn.1994); *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn.1993). If possible, we must determine the legislative intent from the plain language of the statute, "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State,* 804 S.W.2d 66, 67 (Tenn.1991). We must give effect to every word, phrase, clause, and sentence of an act to achieve the legislature's intent. *United Canners, Inc. v. King,* 696 S.W.2d 525, 527 (Tenn.1985). Furthermore, in order to ascertain the legislative intent, the component parts of a statute should be construed, if practicable, so that the parts are consistent and reasonable. *Marsh v. Henderson,* 221 Tenn. 42, 424 S.W.2d 193, 196 (1968).

A court must presume that the legislature intended that every word used in a statute would have a purpose and would convey meaning. *General Care Corp. v. Olsen,*

705 S.W.2d 642, 646 (Tenn.1986). We must give effect to every word, phrase, clause, and sentence in constructing a statute. Further, we must read the statute in its entirety and construe it in light of the purposes and goals the statute serves.

In applying these rules of statutory construction, we conclude that the legislature intended to include unvested retirement benefits as marital property. First, the definition of marital property found in subsection (A) is virtually all inclusive. That broad definition clearly includes unvested retirement benefits. Second, subsection (B), which serves to append to subsection (A's) definition "vested pension, retirement, or other fringe benefit rights" and certain forms of separate property does not exclude unvested retirement benefits.[4] Third, we note that unvested retirement benefits are not included in the definition of separate property.[5] Tenn.Code Ann. § 36–4–121(2) (1991 Repl.). Thus, when we read the statute, in its entirety, and employ long-standing rules of statutory construction, we conclude that unvested retirement benefits are marital property subject to division under Tennessee Code Annotated Section 36–4–121.

■ Our conclusion based on these rules of construction is consistent with the legislative intent behind these statutes. Specifically, the legislative definitions of marital and separate property were "to codify existing case law, to define marital property more clearly, and to recognize a homemaker's contributions." _Kendrick v. Kendrick_, 902 S.W.2d 918, 922 (Tenn.App.1994).

In 1983, when the applicable statutes were drafted, both vested and unvested retirement benefits were considered "economic circumstances" affecting the division of marital property. _Hensley v. Hensley_, 631 S.W.2d

131, 134 (Tenn.App.), _perm. to appeal denied_, (Tenn.1981). Prior to the adoption of the statute, our intermediate appellate court (in an unreported decision) found an unvested military pension to be marital property. Because of a United States Supreme Court decision, _McCarty v. McCarty_, 453 U.S. 210, 233, 101 S.Ct. 2728, 2741–42, 69 L.Ed.2d 589 (1981), which disallowed consideration of _any_ military pensions as marital property, we reversed the Court of Appeals. _Whitehead v. Whitehead_, 627 S.W.2d 944, 945 (Tenn. 1982). Congress reacted to the outcry against _McCarty_ and passed the Uniformed Services Former Spouses' Protection Act (USFSPA), Pub.L. No. 97–252, 96 Stat. 718, 739 (codified throughout 10 U.S.C.) making military retirement benefits again subject to division as marital property. One year later our legislature, presumptively knowledgeable of the state of the law,[6] passed the statute at issue here. Since the declared legislative intent was to codify existing law, we must assume that the legislature intended to include vested and unvested retirement benefits in the definition of marital property.

Moreover, including vested and unvested retirement benefits in the definition of marital property is consistent with the legislature's intent to recognize a homemaker's contribution to the marriage. We agree with the following rationale as quoted and adopted by the Rhode Island Supreme Court:

"To the extent earned during the marriage, the benefits represent compensation for marital effort and are substitutes for current earnings which would have increased the marital standard of living or would have been converted into other assets divisible at dissolution. Subjecting the benefits to division is just, because in most cases the retirement benefits consti-

---

4. The use of the word "includes" to precede the list in subsection (B) does not indicate exclusion of unlisted items, but rather indicates inclusion of listed ones. When a broad statutory definition is followed by language stating that the definition "includes" specific items, the language means that other includable items have not been specifically mentioned. Norman J. Singer, _Statutes and Statutory Construction_, § 47.07, at 152 (Rev. 5th ed. 1992).

5. Separate property, as defined by the legislature, is real or personal property owned before the marriage, property acquired in exchange for property owned before the marriage, income from and appreciation of property owned before the marriage, and property acquired by gift, bequest, devise or descent. Tenn.Code Ann. § 36–4–121(b)(2) (1991 Repl.).

6. The legislature is presumed to have knowledge of the subject on which it acts. _Neff v. Cherokee Ins. Co._, 704 S.W.2d 1, 4 (Tenn.1986).

tute the most valuable asset the couple has acquired and they both have relied upon their pension payments for security in their older years."

*Moran v. Moran,* 612 A.2d 26, 33 (R.I.1992) (quoting 3 Rutkin, *Family Law and Practice,* § 37.07[1] at 37–81 (1985)).

Though not necessary to our conclusion, we note that courts of other states and our own Court of Appeals are in accord with our conclusion that unvested retirement benefits accruing during the marriage constitute marital property. *See* B. Blumberg, "Intangible Assets: Recognition and Valuation," 2 Valuation & Distribution of Marital Property § 23.02(3)(a) (1988). *See e.g., Root v. Root,* 851 P.2d 67 (Alaska 1993); *Cooper v. Cooper,* 167 Ariz. 482, 808 P.2d 1234 (App.1990); *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 637, 544 P.2d 561, 565 (1976); *In re Marriage of Gallo,* 752 P.2d 47, 51 (Colo.1988); *In re Marriage of Hunt,* 868 P.2d 1140 (Colo.App.1993); *Krafick v. Krafick,* 234 Conn. 783, 663 A.2d 365 (1995) (dicta); *Donovan v. Donovan,* 494 A.2d 1260 (Del.Super.Ct.1985); *Dozier v. Dozier,* 606 So.2d 477 (Fla.Dist.Ct.App.1992); *Holler v. Holler,* 257 Ga. 27, 354 S.E.2d 140 (1987) (dicta); *Stouffer v. Stouffer,* 10 Haw.App. 267, 867 P.2d 226 (1994); *Shill v. Shill,* 100 Idaho 433, 599 P.2d 1004 (1979); *In re Marriage of Korper,* 131 Ill.App.3d 753, 86 Ill. Dec. 766, 475 N.E.2d 1333 (1985); *In re Marriage of Fuchser,* 477 N.W.2d 864 (Iowa. App. 1991); *In re Marriage of Harrison,* 13 Kan.App.2d 313, 769 P.2d 678 (1989); *Poe v. Poe,* 711 S.W.2d 849 (Ky.Ct.App.1986); *Breaux v. Breaux,* 555 So.2d 1001 (La.App. 1990); *Thomasian v. Thomasian,* 79 Md. App. 188, 556 A.2d 675 (1989); *Deering v. Deering,* 292 Md. 115, 437 A.2d 883, 889 (1981); *Janssen v. Janssen,* 331 N.W.2d 752, 754–56 (Minn.1983); *Hemsley v. Hemsley,* 639 So.2d 909 (Miss.1994); *Hahn v. Hahn,* 732 S.W.2d 545 (Mo.App.1987); *Polly v. Polly,* 1 Neb.App. 121, 487 N.W.2d 558 (1992); *Gemma v. Gemma,* 105 Nev. 458, 778 P.2d 429 (1989); *Halliday v. Halliday,* 134 N.H. 388, 593 A.2d 233 (1991); *Whitfield v. Whitfield,* 222 N.J.Super. 36, 535 A.2d 986 (App. Div.1987); *Walentowski v. Walentowski,* 100 N.M. 484, 672 P.2d 657 (1983); *Delorey v. Delorey,* 357 N.W.2d 488 (N.D.1984); *Car-penter v. Carpenter,* 657 P.2d 646 (Okla. 1983); *Richardson and Richardson,* 307 Or. 370, 769 P.2d 179 (1989); *Gordon v. Gordon,* 436 Pa.Super. 126, 647 A.2d 530 (1994); *Moran v. Moran,* 612 A.2d 26 (R.I.1992); *Ball v. Ball,* 314 S.C. 445, 445 S.E.2d 449 (1994); *Grode v. Grode,* 543 N.W.2d 795 (S.D.1996); *Kendrick v. Kendrick,* 902 S.W.2d 918 (Tenn. App.1994); *Dewey v. Dewey,* 745 S.W.2d 514 (Tex.App.1988); *Gardner v. Gardner* 748 P.2d 1076 (Utah 1988); *Cook v. Cook,* 18 Va.App. 726, 446 S.E.2d 894 (1994); *Butcher v. Butcher,* 357 S.E.2d 226 (W.Va.1987); *Parker v. Parker,* 750 P.2d 1313 (Wyo.1988). In these decisions, retirement benefits have been described as part of the consideration earned by an employee, *In re Marriage of Brown,* 126 Cal.Rptr. at 637, 544 P.2d at 565, and as a form of deferred compensation provided by the employer for work already performed. *Batson v. Batson,* 769 S.W.2d 849, 857 (Tenn.App.1988), *perm. to appeal denied,* (Tenn.1989). Since the benefits are acquired with the fruits of the wage earner's labor, were it not deferred it could benefit the parties during the marriage. *Deering v. Deering,* 437 A.2d at 888.

We note that the Minnesota Supreme Court's analysis of their statute is most instructive. Like ours, the Minnesota statute does not exclude unvested retirement benefits from its definition of marital property. It does, however, specifically include "vested pension benefits or rights." Minn.Stat. § 518.54 subd. 5 (1982). Like our statute, non-marital or separate property, though defined, does not include unvested retirement benefits. *Id. Contra* N.C. Gen.Stat. § 50–20(b)(2) ("[t]he expectation of unvested pension, retirement, or other deferred compensation rights shall be considered separate property"). The Minnesota court recognized that to exclude unvested retirement benefits from the expansive definition of marital property in light of its absence from the definition of separate property would be to create a separate category not envisioned by the legislature. *Janssen v. Janssen,* 331 N.W.2d at 755.

As we have noted, our construction of Tennessee Code Annotated Section 36–4–121(b)(1)(A) and (B) to included unvested

retirement benefits is consistent with prior decisions from the Court of Appeals. A panel of that court held that the statutory definition of marital property does not exclude an unvested retirement benefit accruing during marriage from equitable division in divorce cases. *Kendrick v. Kendrick,* 902 S.W.2d at 922. In unreported cases, other panels have followed *Kendrick* finding unvested retirement benefits subject to division in a divorce case and holding that vesting has no bearing on the classification of retirement benefits.[7]

Retirement benefits, vested or unvested, are important assets. Many married couples consider these benefits as substitutes for savings or investments. *Kendrick v. Kendrick,* 902 S.W.2d at 920. As the date of vesting grows nearer, the benefit may be the most valuable asset of the marriage, *In re Marriage of Brown,* 126 Cal.Rptr. at 638, 544 P.2d at 566, particularly if economic circumstances have prevented couples from saving or investing a portion of their income. *Deering v. Deering,* 437 A.2d at 887. A spouse who is primarily a homemaker would be seriously disadvantaged by the inability to claim a portion of the retirement benefits that accrued during the course of the marriage. Even when both spouses are publicly employed and have accrued retirement benefits, the spouse who has devoted more time to homemaking and child-rearing will frequently have greatly reduced benefits. In order to obtain an equitable distribution of marital property as contemplated by the legislature, the trial court must be able to consider the distribution of all retirement benefits.

We, therefore, conclude that marital property includes retirement benefits, both vested and unvested which accrue during the marriage. This conclusion is consistent with the language of the statute, the principles of statutory construction, and purposes for its enactment. An interest in a retirement benefit, vested or unvested, accruing during the marriage, is marital property subject to division under Tennessee Code Annotated Section 36–4–121(a)(1).

We are aware that the states that do not recognize unvested retirement benefits as marital property do so largely because of the contingent and speculative nature of the benefit.[8] We find that the better reasoned approach recognizes that the concept of "vesting" is irrelevant to the classification of property as either marital or separate. Even "vested" retirements may be contingent upon the employee's living until the age of retirement. Contingencies should be considered on the issue of method of distribution, perhaps, but not on the determination of classification.

Further, the difficulty in determining the value of the benefits should not affect the classification of the property. Having held that unvested retirement benefits are marital property under our statute, we discuss briefly principles which may assist trial judges in valuing these benefits. Three helpful observations made by the Court of Appeals in *Kendrick* bear repeating:

1. Only the portion of retirement benefits accrued during the marriage are marital property subject to equitable division.

2. Retirement benefits accrued during the marriage are marital property subject to equitable division even though the non-employee spouse did not contribute to the increase in their value.

3. The value of retirement benefits must be determined at a date as near as possible to the date of the divorce.

7. In a related decision, the Court considered whether payment of a portion of military pension benefits was alimony in futuro or a division of marital property. *Towner v.Towner,* 858 S.W.2d 888 (Tenn.1993). Although the husband's right to the pension was unvested at the time of the divorce and the vesting issue was not raised, this Court held that the retirement benefits were marital property, not alimony, and that the monthly payments which would be realized upon retirement were, in effect, a distribution of marital property. *Id.* at 891. While we did not construe the relevant statute, we noted in dicta that in many jurisdictions unvested as well as vested retirement benefits constituted marital property subject to division in divorce cases. *Id.*

8. Four states do not consider unvested pension rights divisible in divorce proceedings. *Burns v. Burns,* 312 Ark. 61, 847 S.W.2d 23 (1993); *Kirkman v. Kirkman,* 555 N.E.2d 1293 (Ind.1990); *George v. George,* 115 N.C.App. 387, 444 S.E.2d 449 (1994); *King v. King,* 78 Ohio App.3d 599, 605 N.E.2d 970 (1992).

The difficulty in dividing future benefits is aided by the use of elastic, equitable approaches. *See e.g.* 24 Am.Jur.2d Divorce and Separation §§ 948, 949 (1983). Most courts use one of two techniques. *In re Marriage of Brown*, 126 Cal.Rptr. at 638, 544 P.2d at 566; *In re Marriage of Gallo*, 752 P.2d at 54; *Janssen v. Janssen*, 331 N.W.2d at 755. The first approach, known as the present cash value method, requires the trial court to place a present value on the retirement benefit as of the date of the final decree. *Kendrick v. Kendrick*, 902 S.W.2d at 927. To determine the present cash value, the anticipated number of months the employee spouse will collect the benefits (based on life expectancy) is multiplied by the current retirement benefit payable under the plan. *In re Marriage of Gallo*, 752 P.2d at 54. This gross benefit figure is then discounted to present value allowing for various factors such as mortality, interest, inflation, and any applicable taxes. *Id. See also In re Marriage of Grubb*, 745 P.2d at 666; *In re Marriage of Hunt*, 78 Ill.App.3d 653, 34 Ill. Dec. 55, 63, 397 N.E.2d 511, 519 (1979); *Deering v. Deering*, 437 A.2d at 891. Once the present cash value is calculated, the court may award the retirement benefits to the employee-spouse and offset that award by distributing to the other spouse some portion of the marital estate that is equivalent to the spouse's share of the retirement interest. *In re Marriage of Gallo*, 752 P.2d at 54. The present cash value method is preferable if the employee-spouse's retirement benefits can be accurately valued, if retirement is likely to occur in the near future, and if the marital estate includes sufficient assets to offset the award. *Kendrick v. Kendrick*, 902 S.W.2d at 927; *In re Marriage of Gallo*, 752 P.2d at 54.

In other circumstances in which the vesting or maturation is uncertain or in which the retirement benefit is the parties' greatest or only economic asset, courts have used the "deferred distribution" or "retained jurisdiction" method to distribute unvested retirement benefits. This method has distinct advantages when the risk of forfeiture is great. *Kendrick v. Kendrick*, 902 S.W.2d at 927. Under such an approach, it is unnecessary to determine the present value of the retirement benefit. Rather, the court may determine the formula for dividing the monthly benefit at the time of the decree, but delay the actual distribution until the benefits become payable. *In re Marriage of Brown*, 126 Cal.Rptr. at 639, 544 P.2d at 567; *In re Marriage of Gallo*, 752 P.2d at 55; *Deering v. Deering*, 437 A.2d at 891; *Janssen v. Janssen*, 331 N.W.2d at 753. The marital property interest is often expressed as a fraction or a percentage of the employee spouse's monthly benefit. The percentage may be derived by dividing the number of months of the marriage during which the benefits accrued by the total number of months during which the retirement benefits accumulate before being paid. *Kendrick v. Kendrick*, 902 S.W.2d at 927 n. 17.[9]

One advantage to the deferred distribution method is that it allows an equitable division without requiring present payment for a benefit not yet realized and potentially never obtained. *In re Marriage of Gallo*, 752 P.2d at 55. Another advantage to the approach is that it equally apportions any risk of forfeiture. While a disadvantage may be that the approach requires a trial court to retain jurisdiction to oversee the payment, the entry of an order awarding a certain percentage of the benefits at the time of payment should lessen the administrative burden of the court. Courts routinely retain jurisdiction to supervise payments of alimony and child support and have, in the past, successfully divided vested pension rights by awarding each spouse a share. An administrative burden should not excuse an inequitable distribution of marital property.

The choice of valuation method remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances.

9. For example, if retirement benefits had accrued during ten years of a twelve year marriage, and if the benefit payments would be payable at the end of twenty years, the ratio would be 120/240. Fifty percent of the potential benefit would be marital property. The trial court would then make an equitable division of that fifty percent allotting a portion to the nonemployee spouse.

While the parties are entitled to an equitable division of their marital property, that division need not be mathematically precise. *Kendrick v. Kendrick,* 902 S.W.2d at 929; *Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn.App.1990). It must, however, reflect essential fairness in light of the facts of the case. *Kendrick v. Kendrick,* 902 S.W.2d at 929.

In this case, Mr. Cohen earned approximately six years of retirement benefits during the marriage. Those benefits are marital property subject to equitable division by the court. Rather than choose the valuation method on this record, we remand to allow the parties to present additional evidence pertinent to the valuation of the account. After hearing the evidence, the trial court shall determine the appropriate valuation method and shall make appropriate orders distributing the portion of the parties' marital property. We note that this holding applies to this case and to those other cases in which the property rights arising out of the marriage have not yet been adjudicated by the trial court or in which the issue has been raised and review is pending in the appellate courts.

### III.

The second issue for our consideration is whether an increase in equity in real property is subject to division as marital property even though the real property is the separate property of one spouse. The real property in this case, owned by Mr. Cohen's aunt, had a market value of $75,000. With his father's help, Mr. Cohen paid $25,000 down [10] and his aunt carried the remaining $50,000 as a twenty-year mortgage. Thus, at the time of the purchase, Mr. Cohen's equity was $25,000. Between the date of the marriage and the date of the divorce, the equity in the property increased $17,000.

10. Mr. Cohen's father also had an interest in the property which the parties agreed was worth $25,000. The father gave this interest to his son as "his inheritance." Mr. Cohen paid his aunt $2,500 as a down payment.

11. In addition to the unvested retirement benefits, Mr. Cohen had other deferred compensation

At the time of the divorce, the parties stipulated that the market value of the real property was $130,000. The trial court credited the husband with $25,000 (as a gift or inheritance) and the wife with $10,000, a gift from her family used to improve the home. After the $33,000 debt was satisfied, the remaining $62,000 was divided equally, resulting in an award to the husband of $56,000 and to the wife of $41,000.[11]

The Court of Appeals reversed holding that the entire value of the real property was separate property. First, the court concluded that Mr. Cohen had paid all the mortgage payments, insurance, and taxes, on the residence. Secondly, the court found no evidence that any interest in the property had been conveyed to the wife. Lastly, the Court of Appeals apparently did not consider the increased equity in the real property as marital property because the wife had not made a substantial contribution to its "preservation and appreciation."

█ We must determine whether the amount by which a mortgage is reduced on separate property during a marriage, i.e., the increased equity, constitutes marital property subject to division upon divorce. While the Court of Appeals has found an increase in equity in separate property to be marital property when the payments are made from marital funds, *Mondelli v. Howard,* 780 S.W.2d 769 (Tenn.App.1989), we have never considered this question.

Marital property as defined by the legislature includes the "income from, and any increase in value during the marriage, of property determined to be separate property ... if each party substantially contributed to its preservation and appreciation...." Tenn. Code Ann. § 36-4-121(b)(1)(B) (1991 Repl.). Our courts have consistently interpreted the phrase "any increase in value" as all inclusive. *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn.1988) (disallowing exception based on

benefits valued at $10,869. The trial court ordered that Pamela Cohen be paid $5,434 out of Jay Cohen's share at the time the house was sold. When that sum is taken into account, the husband would receive $50,565 and the wife $46,434 from the house proceeds.

inflation); *Sherrill v. Sherrill,* 831 S.W.2d 293, 294 (Tenn.App.), *perm. to appeal denied,* (Tenn.1992); *Mondelli v. Howard,* 780 S.W.2d at 774. However, the spouse must have made a substantial contribution to the increase before it is subject to division as marital property. *Harrison v. Harrison,* 912 S.W.2d 124, 127 (Tenn.1995)(where construction of interstate highway is sole cause of increase in value, the increase is not marital property).

Put simply, equity in real property is acquired as the debt is reduced. It accrues gradually. Its potential increases with each payment. Owners borrow against it, use its proceeds for other purchases or to reduce other debts. It is a major reason for purchasing a home. Under our state law, equity in separate property that accrues during the marriage is subject to division as marital property if the non-owner spouse makes a substantial contribution to the increase in the value. *Id.; Ellis v. Ellis,* 748 S.W.2d at 427; Tenn.Code Ann. § 36–4–121(b)(1)(B) (1991 Repl.). To exclude that increase from division would be contrary to the plain meaning of the statute. Consequently, an increase in the equity in real property, which accrues during the marriage, is marital property subject to division upon divorce, notwithstanding the fact that the real property was separate property, if the non-owner spouse substantially contributes to the increase in value.

The two prerequisites which must be met before a non-owner spouse may claim an interest in the increased equity on separate property are clearly set out in the statute. First, the increase in equity (i.e., the reduction in debt) must have occurred during the marriage. Second, the non-owner spouse must have made a substantial contribution to the increase, i.e., reduction.[12] In this case, both conditions are satisfied.

 During the marriage, the debt owed on the house was reduced by $17,000. Secondly, the trial court concluded that the wife made a substantial contribution to the increase in equity. That determination is a question of fact. *See Brown v. Brown,* 913

S.W.2d 163, 167 (Tenn.App.1994), *perm. to appeal denied,* (Tenn.1995). The record supports the trial court's conclusion. Mr. Cohen wrote and signed the checks for the mortgage, homeowner's insurance premiums, and taxes. Those checks were drawn on the Cohens' joint checking account. The couple's only sources of income were the salaries from their employment. Salaries of each spouse are marital property under the statutory definition. Tenn.Code Ann. § 36–4–121(b)(1) (1991 Repl.). Moreover, a spouse's direct financial contribution to family expenses and indirect contributions as homemaker constitute contributions to the appreciation or preservation of the other spouse's separate property. *Brown v. Brown,* 913 S.W.2d at 167. It is of little consequence who signed or wrote the checks when the account on which the checks were drawn contained both parties' earnings.

We, therefore, conclude that the increased equity in Mr. Cohen's separate property, which accrued during the course of the marriage and as a result of Mrs. Cohen's substantial contribution, is marital property subject to division.

### Conclusion

We affirm the judgment of the Court of Appeals finding Mr. Cohen's unvested retirement benefits to be marital property subject to division. We reverse the Court of Appeals' finding that the increased equity in Mr. Cohen's separate real property is not marital property. We remand the case to the trial court for a determination, first, of the value of the unvested retirement benefits, and then for an equitable distribution of the marital assets taking into consideration both the retirement benefits and the increased equity in Mr. Cohen's separate real property.

BIRCH, C.J., and DROWOTA, ANDERSON and REID, JJ., concur.

---

**12.** The fact that no title or other legal interest has been conveyed to the non-owner spouse is irrelevant. For the purposes of property division in a divorce, "[i]n the final analysis, the status of property depends not on the state of its record title, but on the conduct of the parties." *Mondelli v. Howard,* 780 S.W.2d 769, 774 (Tenn.App. 1989) (citing *Jones v. Jones,* 597 S.W.2d 886, 887 (Tenn.1979) & *Langford v. Langford,* 220 Tenn. 600, 421 S.W.2d 632, 634 (1967)).