IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2008 Session

## PATSY WICKS DAWSON v. ISAAC DALE DAWSON

**Appeal from the General Sessions Court for Roane County**
**No. 8428A & 8435A      Dennis W. Humphrey, Judge**

**No. E2008-0199-COA-R3-CV - FILED SEPTEMBER 5, 2008**

After more than eighteen years of marriage, Patsy Wicks Dawson ("Wife") sued Isaac Dale Dawson ("Husband") for divorce. After a trial, the Trial Court entered an order, *inter alia*, awarding Husband a divorce and distributing the marital property. Wife appeals raising an issue regarding the distribution of the marital property. We vacate the distribution of the marital property and remand this case to the Trial Court to value items of marital property as necessary to effectuate an equitable division of marital property under the facts of this case such that Husband receives 60% and Wife receives 40%. The remainder of the Trial Court's Final Decree of Divorce is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Vacated, in part; Affirmed, in part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

James S. Smith, Jr., Rockwood, Tennessee for the Appellant, Patsy Wicks Dawson.

Browder G. Williams, Kingston, Tennessee for the Appellee, Isaac Dale Dawson.

## OPINION

## Background

Wife and Husband were married in July of 1988. While no children were born of the marriage, Wife and Husband each have adult children from previous marriages. Wife sued Husband for divorce in February of 2007.[1] The case was tried without a jury.

Wife was a LPN and was in school seeking to obtain her RN license when the parties married. Wife obtained her RN license early in the marriage. Husband, in addition to working outside the home, owns an interest in farm property that he inherited from his parents. The farm property consists of over 100 acres that Husband owns jointly with his sister. Wife conceded at trial that the farm is not marital property.

Prior to the marriage, Husband and his father operated the farm together. Before the parties were married, Husband owned ten cows and Husband's father owned fifteen. During the marriage, Husband inherited his father's cows. At the time of trial, Husband owned twenty-one cows and one bull.

During the marriage, Husband and Wife lived in a house at 1007 Swan Pond Circle in Harriman, Tennessee. When Husband and Wife first were married, the marital home property was owned by Husband's parents. After the parties were married for a year or so, Husband's parents deeded the title to the marital home property to Husband and Wife. Husband and Wife did not pay Husband's parents anything when the parents deeded the property to them in 1990. No debt is owed on the marital home property.

Daniel Holloway, a state-certified real estate appraiser, testified at trial regarding the value of the marital home property. Mr. Holloway inspected the property approximately one month before trial. He testified that the home is a split-level ranch, approximately thirty-three years old, and in "a little bit below-average condition." Mr. Holloway gave the marital home property a fair market value of $135,000.

Wife testified that she made improvements to the marital home during the marriage. She testified that early in the marriage, she purchased and installed five ceiling fans and that over the years she also paid for new carpet and flooring in the kitchen, dining room, living room, and hallway. Wife testified that she and Husband put central air in the house at a cost of approximately $7,500, and that part of this cost was paid for using the parties' joint income tax refund. Husband testified that the central air was installed in the early 1990's and that he sold a group of calves to pay for this expense. Husband could not recall if the parties had spent any of their tax refund money to pay for the central air. Wife testified that she paid $785 to have a bathroom vanity built and also paid $8,500 to have kitchen cabinets built and installed. Wife testified that she paid $7,000 to put

---

[1] Husband also filed a separate suit for divorce and the Trial Court entered an order consolidating the two cases and designating Husband's case as a counter-complaint for divorce.

new windows in the house. Husband produced a receipt at trial and testified that the windows were purchased in 2002 and cost only $4,650. The carpet and floors were done shortly after the parties married, and the cabinets were installed approximately a year before trial. Wife testified that she spent approximately $28,600 on the house "not counting - - I mean, I've done electrical repairs. I've repaired the electrical outlet in the bedroom. I've done plumbing repairs before in the bathroom. I ran phone lines to put extra phones in the house. I ran them and installed the phones myself." Wife valued the marital home at $150,000, stating:

> Well, there's been a lot of building going on out there, and I've been looking at the prices of just 5/10's of an acre building lot are sometimes getting $30,000. So, you know, I'm looking at this house sitting on an acre of land and with - - I know the outside is - - needs repairs on it and - - but, you know, you could get more than 135,000 out of it, just because of the fact it's in Swan Pond ….

Husband testified that he has resided in the marital home for approximately thirty-two years starting when he and his previous wife built the house. When Husband and his previous wife divorced, she was awarded $8,000 for her interest in the home, even though the property at that time was owned by Husband's parents. When asked how much value he thinks that the improvements Wife testified about added to the value of the house, Husband stated: "I would say about 8- to $10,000, in my opinion only." Husband testified that the property assessor valued the home at $131,300.

Up until the time of trial, both parties continued to reside in the marital home. Wife admitted that shortly before she filed for divorce, she stopped doing things around the house including cooking, cleaning certain areas of the house, and paying the utilities. Wife also started smoking in the house. A few months after she filed for divorce Wife got a dog that is not house-trained. Wife leaves the dog inside during the day while she is at work and the dog messes on the floors and carpets.

During the marriage, Wife paid the utility and phone bills and Husband paid for the groceries, the real estate taxes, and the homeowner's insurance. When either party purchased a vehicle, the purchasing party made the payments. The parties maintained separate bank accounts in their own names. Husband testified: "when we filed our income tax, I would sign my name and she'd put it into an account, and that's where the moneys would come from for big items like [installing windows in the house]."

Wife testified that she helped out on the farm stating:

> I worked on the farm after we were married. I even worked out in the fields, me and my daughters, loading hay on the wagons. I've helped deliver calves. I've bottled (sic) fed calves. I've tube fed calves. I've helped build fence. I've fed the cows in the wintertime. I gave the cows their vaccinations every year.

Wife agreed that she did not do as much work on the farm as Husband did. When asked about work that Wife did on the farm, Husband stated:

-3-

about every April, we'd vaccinate our cattle. She'd give shots. And if we had a cow had a problem, she would help deliver the calves. And lots of times, if there was any medicine to do or having to work with them in that respect, she would - - she would help.

Husband, however, also stated: "She done very little. I do about all of it."

After trial, the Trial Court entered a Final Decree of Divorce ("Final Decree") on November 20, 2007 incorporating by reference the Trial Court's separately filed Findings of Fact and Conclusions of Law. In its Final Decree, the Trial Court, *inter alia*, awarded Husband a divorce, ordered Husband to pay Wife $20,000 for her share of the marital home valued at $135,000, found the livestock herd to be marital property and awarded Wife $3,000 as her share of this asset, and distributed the remaining items of marital property.

Wife appeals the distribution of marital property to this Court.

**Discussion**

Although not stated exactly as such, Wife raises one issue on appeal: whether the Trial Court's distribution of the marital property was equitable.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Courts must look to Tenn. Code Ann. § 36-4-121 when determining how to distribute property in a divorce. In pertinent part, Tenn. Code Ann. § 36-4-121 provides:

(b) For purposes of this chapter:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing . . . .

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, . . . .

* * *

(D) As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

* * *

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage,….

* * *

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

* * *

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties. . . .

Tenn. Code Ann. § 36-4-121 (2005).

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 Tenn. App. LEXIS 100, at *11-12 (Tenn. Ct. App. Feb. 9, 1998), *no appl. perm. appeal filed)*.

In support of the Trial Court's distribution, Husband argues on appeal that since he built the marital house before the marriage, he owned the house even though his parents owned the land on which the house sat. From the record before us, the Trial Court found Husband to be incorrect, and the evidence does not preponderate against this finding. Husband made improvements to real property owned by his parents, and there is nothing in the record showing that Husband owned the improvements, i.e., the house. While his parents still owned the land, Husband would have had a potential claim against his parents for the monies that Husband expended improving the real property. When Husband's parents deeded the real property to Husband and Wife during the marriage, the conveyance included the land, the house, and any other improvements upon the land. The parties' treatment of the house and the land as one asset over the years of their marriage is consistent with this finding. When Husband's previous wife was awarded money during that divorce as her share in the house, what she apparently was awarded was an interest in the marital funds spent

during that marriage to improve property owned by Husband's parents pursuant to the potential claim as mentioned above.

The evidence in the record on appeal does not preponderate against the Trial Court's finding that the marital home, including both the real property and the house itself, constituted marital property. Nor does the evidence preponderate against the Trial Court's finding that the value of the marital home is $135,000.

The evidence in the record on appeal does not preponderate against the Trial Court's findings that the livestock herd and the parties' bank accounts were marital property. However, the Trial Court made no specific findings regarding the value of these items of marital property.

At trial, the parties stipulated that each would receive the retirement accounts in that party's name. The parties did not stipulate as to the specific value of these accounts although the parties acknowledge in their briefs on appeal that these accounts were of approximately equal value. The Trial Court made no findings with regard to these accounts.

Wife's brief on appeal, including her property table prepared by Wife's attorney in accordance with Rule 7 of the Rules of this Court, asserts that the Trial Court awarded her approximately 20% of the marital estate and awarded Husband approximately 80%. As the record on appeal does not contain values for several items of marital property, we are unable to determine what the exact percentage division was. However, we note that Husband on appeal does not argue that it was not an 80% - 20% split as Wife asserts.

A careful and thorough review of the record on appeal in light of the relevant statutory factors, including among others, the contribution of both Husband and Wife to the acquisition, preservation, appreciation, depreciation or dissipation of the marital property, shows that an 80/20 split of marital property in this case would be inequitable. This was a marriage of over eighteen years and the evidence shows that both parties maintained careers and made significant contributions toward the marital estate over the years. The evidence also shows, as found by the Trial Court, that Husband's contribution to the marital estate was greater than Wife's.

We hold that given the evidence and the circumstances of this case in light of the relevant statutory factors, an equitable division of the marital estate would be 60% to Husband and 40% to Wife. We, therefore, vacate the distribution of marital property and remand this case to the Trial Court to value items of marital property as necessary and to distribute the marital property to effectuate this 60/40 division of the marital property. We affirm the remainder of the Final Decree.

### Conclusion

The judgment of the Trial Court is vacated as to the distribution of marital property and this cause is remanded to the Trial Court for valuation of items of marital property as necessary to distribute the marital property to effectuate a division such that Husband receives 60% and Wife receives 40%, and for collection of the costs below. The remainder of the Trial Court's judgment is affirmed. Costs on appeal are assessed against the Appellee, Isaac Dale Dawson.

_____
D. MICHAEL SWINEY, JUDGE