IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 7, 2013 Session

## CONNIE JUNE TIPTON STOUT v. JACKIE HAROLD STOUT

**Appeal from the Chancery Court for Washington County**
**No. 30901      Jean A. Stanley, Judge**

---

**No. E2013-00760-COA-R3-CV - Filed December 30, 2013**

---

This action involves the proper adjudication of the parties' interests in certain marital retirement assets post divorce. The sole issue raised is whether the trial court properly retained jurisdiction over the retirement assets pursuant to a Qualified Domestic Relations Order ("QDRO"). Based on prior precedent, we find that the trial court did properly retain jurisdiction, and we therefore affirm the trial court's decision in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

John S. Taylor, Johnson City, Tennessee, for the appellant, Jackie Harold Stout.

Lois B. Shults-Davis, Erwin, Tennessee, for the appellee, Connie June Tipton Stout.

**OPINION**

I.  Factual and Procedural Background

Plaintiff, Connie June Tipton Stout ("Wife"), filed a complaint for divorce against defendant, Jackie Harold Stout ("Husband"), in the Chancery Court for Washington County. The parties were married for twenty-four years. A hearing regarding the parties' divorce was held on February 19, 1997. The April 13, 1998 final decree of divorce recited, *inter alia*, that the parties had reached an agreement regarding the division of Husband's retirement benefits and provided that Wife was immediately awarded $6,000.00 from Husband's "Thrift retirement plan," plus an additional $2,400.00 from said plan as alimony *in solido*. The court

reserved jurisdiction with regard to this asset to effectuate the transfer of funds. The decree further stated that "in the event that any of the foregoing provisions are deemed to be unenforceable or legally impossible, the court shall retain jurisdiction to redress the equities of the parties and the division of their property to effectuate the intent of the foregoing agreement."

The next paragraph of the final decree recited that the parties had reached an agreement regarding an award to Wife of "certain further portions" of Husband's retirement benefits but had been unable to reduce their agreement to writing. That issue was reserved pending further hearing, with the decree expressly stating that the trial court "does hereby reserve jurisdiction to enter a Qualified Domestic Relations Order regarding the award of retirement benefits unto [Wife]."

A subsequent order, entered on January 11, 1999, provided that Wife was awarded fifty percent of "any and all retirement that [Husband] withdraw[s] or receives in distribution from his Kennametal retirement plan when he reaches age 65 or any other time that he is paid anything from said account." On that same date, the trial court concomitantly entered a QDRO, which stated that it was entered pursuant to the parties' divorce and that two retirement plans were involved: 1) the K-Thrift Plan Plus and 2) the Kennametal Retirement Plan. The QDRO also stated that $2,400.00 from the K-Thrift Plan Plus would be transferred to Wife effective February 19, 1997, the date of the divorce hearing. The order further directed that there would also be a transfer to Wife of fifty percent of the "retirement benefits and distributions" from Husband's Kennametal Retirement Plan as accrued by February 19, 1997. Such transfer was to occur either when Husband reaches age sixty-five or "at such other time he is paid anything from the Kennametal Retirement Plan."

On July 29, 1999, an additional order was entered[1] titled "Domestic Relations Order" ("DRO"), which stated that Husband was a participant in the Kennametal Inc. Retirement Income Plan and that Wife was the alternate payee. The DRO recognized that under Tennessee law, the accrued benefits under the plan constitute marital property subject to division, and that Wife was entitled to share in those benefits. The DRO assigned Wife fifty percent of Husband's accrued benefit as of February 28, 1997, and expressly provided that "there are not other orders which purport to dispose of the benefits described herein which are inconsistent herewith." The DRO set forth that payments would begin "as soon as administratively feasible" but after Husband reaches retirement age. The DRO also stated:

---

[1] The only explanation for this subsequent order is found in a pleading filed by Husband, stating that the DRO "was merely more detailed and in satisfaction of the technical requirements of domestic relations orders than was the one of January 11, 1999." The DRO does appear to contain the wording and information typically contained in a QDRO and is more detailed than the earlier QDRO.

It is intended that this Order shall qualify as a Qualified Domestic Relations Order under the Retirement Equity Act of 1984, P.L. 98-397. If any provision of this Order is inapplicable it shall be ignored and it shall not affect the validity of other provisions or of the Order itself. **The Court retains jurisdiction to amend this Order as might be necessary to establish or maintain its status.**

(Emphasis added.)

On February 1, 2001, nearly two years after entry of the DRO, the trial court entered an order entitled Agreed Order Modifying Qualified Domestic Relations Order ("Agreed Order"). This Agreed Order recites:

WHEREAS, a Qualified Domestic Relations Order was entered in this case on January 11, 1999, which provided, among other things, that the plaintiff, Connie June Tipton Stout, would receive certain benefits from the retirement plan of the defendant, Jackie Harold Stout, at his place of employment which is the Kennametal Company located in Johnson City, Tennessee, and

WHEREAS, the defendant, on April 14, 1997, paid directly to the plaintiff the sum of $6,000.00 and the defendant, on August 22, 1997, paid directly to the plaintiff the sum of $2,400.00, the total of these two sums being $8,400.00, which sum is in lieu of and substitution and full satisfaction of any amounts which the plaintiff was to receive from the defendant's retirement plan at his place of employment, and

WHEREAS, a Qualified Domestic Relations Order was thereafter filed with the Court, on January 11, 1999, transferring a certain portion of the benefits due the defendant under his retirement plan to the plaintiff, and

WHEREAS, as outlined hereinabove, the parties had earlier settled all issues concerning any entitlement of the plaintiff to any benefit out of the defendant's retirement plan at Kennametal, and

WHEREAS, the parties now desire to modify the Qualified Domestic Relations Order entered in this case on January 11, 1999, to reflect that this issue has now been settled between the parties by direct payment.

THEREFORE, in accordance with the parties' agreement, it is hereby

-3-

ORDERED by the Court as follows:

1.      That the Qualified Domestic Relations Order filed in this case on January 11, 1999, is amended and modified to provide that the plaintiff shall not be entitled to any portion of the benefits due to the defendant from his K-Third[sic] Plan and/or his Kennametal Retirement Plan, both at his place of employment which is Kennametal.

2.      That the costs of entering this Order are taxed to the defendant, for which let execution issue within the time allowed by law.

This Agreed Order, signed by the judge and counsel for both parties, was entered by the trial court on February 1, 2001. Almost twelve years later, Wife filed a motion seeking relief from the Agreed Order, asserting that it was "improvidently drafted and entered into as a mistake." Wife claimed that the $8,400.00 that she was paid by Husband only satisfied her share of the funds from the K-Thrift Plan. Wife's motion states that the intent of the Agreed Order was "to confirm the K-Thrift payments and prevent same from being paid again" and that the Agreed Order was not intended to change the earlier order awarding Wife benefits under the Kennametal Inc. Retirement Income Plan. Wife asserted that this Agreed Order denied her the property previously awarded to her and was inconsistent with the July 1999 DRO and the trial court's January 1999 order.

Husband filed a response, contending that the motion filed by Wife was, in actuality, a motion pursuant to Tennessee Rule of Civil Procedure 60.02 and thus untimely. Husband posited that a motion pursuant to Tennessee Rule of Civil Procedure 60.02 was required to be brought within one year after entry of the judgment. Husband also asserted that the Agreed Order was intended to extinguish Wife's entitlement to any further benefits from either of Husband's retirement plans. Wife filed a subsequent response, stating that the trial court retained jurisdiction over the issue of retirement benefits in the July 1999 DRO.

A hearing was held on December 20, 2012, but no proof was considered by the trial court. Based upon the pleadings in the record and the statements of counsel, the trial court made the following findings:

[T]he defendant Jackie Harold Stout was during the parties' marriage a participant in and accrued benefits in two (2) retirement plans through his employment at Kennametal, Inc., to wit: a 401-K Thrift Savings Plan and a Kennametal Inc. Retirement Income Plan; that plaintiff was awarded by the parties' Final Decree of divorce payments totaling $8,400.00 from the 401-K Thrift Savings Plan; the Final Decree also reserved "the wording or an award

-4-

of a portion of defendant's" remaining retirement benefits; that by an Order entered January 11, 1999, a Qualified Domestic Relations Order entered January 11, 1999, and a Domestic Relations Order entered July 29, 1999, plaintiff was awarded 50% of the defendant's Kennametal Inc. Retirement Income Plan benefits as of February 28, 1997; that the Court retained jurisdiction to amend or maintain the status of the award of these benefits; that in 2001 an order was entered modifying the January 11, 1999, Qualified Domestic Relations order to acknowledge payment of the 401-K benefits due plaintiff and eliminate plaintiff's entitlement to any of the retirement income plan benefits; that the 2001 order is incorrect, inconsistent and ambiguous on its face and does not match up in that in the "Whereas" clauses [it] speaks only of payment of the required payments under the division of the 401-K Thrift Plan but goes on in the [other] portions of said order to eliminate the retirement income plan benefits without explanation; that this portion of the order does not match the whereas clauses; that the 2001 order is inconsistent with all other orders concerning the retirement income plan benefits in the record, that the 2001 order only modifies or sets aside the January 11, 1999 QDRO; that the January 11, 1999 Order awarding benefits and the July 29, 1999 DRO remain unaffected and continue to award the plaintiff 50% of the retirement income plan benefit as originally worded; that the July 29, 1999 DRO is a valid and final order; that no portion of the Kennametal Inc. Retirement Income Plan Benefits awarded there-under, past, present or future are in any way forgiven . . . .

The trial court therefore concluded that the DRO entered July 29, 1999, remained and constituted a valid final order concerning the award of Kennametal Inc. Retirement Income Plan benefits to Wife and should be enforced to provide for payment of those benefits to her. Husband timely appealed.

## II.  Issue Presented

Husband presents the following issue for our review:

Whether the trial court was correct in effectively setting aside the Agreed Order and awarding Wife a portion of Husband's Kennametal Inc. Retirement Income Plan.

## III.  Standard of Review and Jurisdiction

The trial court's conclusions of law are reviewed under a *de novo* standard, with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.

1993).

Husband first contends that if the trial court granted relief to Wife pursuant to Tennessee Rule of Civil Procedure 60.02, such relief was improper as the motion was untimely filed. A thorough review of the record demonstrates that the trial court did not grant relief pursuant to Tennessee Rule of Civil Procedure 60.02. Instead, the court's relief was granted pursuant to the trial court's retention of jurisdiction over this retirement asset pursuant to the July 1999 DRO. Ergo, Husband's argument relative to Tennessee Rule of Civil Procedure 60.02 is unavailing.

Husband next contends that the trial court had no basis for retaining jurisdiction over this asset. We disagree. This Court has previously recognized that a trial court may retain jurisdiction to establish or maintain a QDRO with regard to the division of retirement benefits incident to divorce. *See, e.g., Woody v. Woody*, No. E2001-02078-COA-R3-CV, 2002 WL 31421668 at *3 (Tenn. Ct. App. Oct. 29, 2002). This Court also explained in *Woody* that the trial court has the authority, pursuant to Tennessee Rule of Civil Procedure 60.01, to correct an error in a judgment *sua sponte* without limitation as to time. *Id.* at *2.

Further, as our Supreme Court has elucidated, a common method that has been utilized by courts for distributing future retirement benefits incident to divorce is the "retained jurisdiction" method, wherein the court determines a percentage of division to be effectuated when the spouse who holds the benefits reaches retirement age. *See Cohen v. Cohen*, 937 S.W.2d 823, 831 (Tenn. 1996). *See also Kendrick v. Kendrick*, 902 S.W.2d 918, 927 (Tenn. Ct. App. 1994); *Cozart v. Cozart*, No. 02A01-9810-CV-00285 at *5-6 (Tenn. Ct. App. Aug. 27, 1999). In *Cohen*, the Court explained:

> In other circumstances in which the vesting or maturation is uncertain or in which the retirement benefit is the parties' greatest or only economic asset, courts have used the "deferred distribution" or "retained jurisdiction" method to distribute unvested retirement benefits. This method has distinct advantages when the risk of forfeiture is great. Under such an approach, it is unnecessary to determine the present value of the retirement benefit. Rather, the court may determine the formula for dividing the monthly benefit at the time of the decree, but delay the actual distribution until the benefits become payable. The marital property interest is often expressed as a fraction or a percentage of the employee spouse's monthly benefit. . . .
>
> One advantage to the deferred distribution method is that it allows an equitable division without requiring present payment for a benefit not yet realized and potentially never obtained. Another advantage to the approach is that it

equally apportions any risk of forfeiture. While a disadvantage may be that the approach requires a trial court to retain jurisdiction to oversee the payment, the entry of an order awarding a certain percentage of the benefits at the time of payment should lessen the administrative burden of the court. Courts routinely retain jurisdiction to supervise payments of alimony and child support and have, in the past, successfully divided vested pension rights by awarding each spouse a share. An administrative burden should not excuse an inequitable distribution of marital property.

The choice of valuation method remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances.

*Cohen*, 937 S.W.2d at 831 (internal citations omitted).

The approach explained by the court in *Cohen* appears to be precisely what occurred in the case at bar. The trial court ordered on January 11, 1999, that Wife was awarded fifty percent of "any and all retirement that [Husband] withdraw[s] or receives in distribution from his Kennametal retirement plan when he reaches age 65 or any other time that he is paid anything from said account." Clearly, the trial court's order "determine[d] the formula for dividing the monthly benefit at the time of the decree, but delay[ed] the actual distribution until the benefits [became] payable," while expressing the marital property interest "as a fraction or a percentage of the employee spouse's monthly benefit." *See Cohen*, 937 S.W.2d at 831. No present value of the asset was established. The subsequent QDRO and DRO effectuated this division. Significantly, the DRO expressly stated that the trial court was retaining jurisdiction "to establish or maintain" the status of the DRO. As such, the trial court was simply adopting a method of distributing future retirement benefits that has been previously recognized and utilized by courts of this state. *Id.*

Pursuant to the trial court's express retention of jurisdiction, the court exercised the authority to take appropriate action in maintaining the status of the DRO and to effectuate its division of the parties' marital property. Although it would be impermissible for the trial court to establish or maintain a QDRO that was inconsistent with the terms of the parties' final decree, *see Ziobrowski v. Ziobrowski*, No. M2006-02359-COA-R3-CV, 2007 WL 4530460 at *6 (Tenn. Ct. App. Dec. 20, 2007), such was not the circumstance here. The July 1999 QDRO was entirely consistent with the January 1999 order of the court, the latter providing that Wife was entitled to fifty percent of Husband's retirement benefits from the Kennametal Inc. Retirement Income Plan.

What proves inexplicably inconsistent, however, is the 2001 Agreed Order. While the order recites that Husband paid Wife a total of $8,400.00 in 1997, which was the specific

amount that Husband was to transfer from his K-Thrift Plan, it further purports to extinguish any future benefits due to Wife from both the K-Thrift Plan and the Kennametal Inc. Retirement Income Plan. Notably, the 2001 Agreed Order only discusses modification of the January 1999 QDRO, which addressed the payments due from the K-Thrift Plan as well as the Kennametal Inc. Retirement Income Plan. No mention is made of the July 1999 DRO, which dealt specifically and solely with the Kennametal Inc. Retirement Income Plan. The trial court found that the 2001 Agreed Order was incorrect and did not affect the July 1999 DRO, which prior order should be enforced to grant Wife fifty percent of Husband's benefits from the Kennametal Inc. Retirement Income Plan. As explained above, the trial court retained jurisdiction to make such determination, and we discern no error therein.

## IV. Conclusion

The judgment of the trial court is affirmed. Costs on appeal are taxed to appellant, Jackie Harold Stout. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE