IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2001 Session

# PAMELA K. CANTRELL v. JAMES MICHAEL CANTRELL, JR.

**Appeal from the Circuit Court for Bradley County**
**No. V-99-1030      Jerri S. Bryant, Chancellor, by Interchange**

**FILED DECEMBER 19, 2001**

**No. E-2001-00259-COA-R3-CV**

Pamela K. Cantrell ("Wife") filed for divorce from James Michael Cantrell, Jr. ("Husband"). This was the second time the parties had been married to each other. After a trial, the Trial Court awarded Wife a divorce on the basis of Husband's inappropriate marital conduct. The Trial Court divided the marital assets and awarded Wife rehabilitative alimony. Husband's main issues on appeal challenge the division of marital assets and award of rehabilitative alimony. We modify the rehabilitative alimony award and affirm the division of marital assets.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

B. Prince Miller, Jr., Cleveland, Tennessee, for the Appellant James Michael Cantrell, Jr.

Randy Sellers, Cleveland, Tennessee, for the Appellee Pamela K. Cantrell.

**OPINION**

## Background

This divorce case involves the second time these parties have been married to each other and then divorced. The main issues on appeal concern the Trial Court's division of marital assets and award of alimony. Husband does not challenge the Trial Court's granting of a divorce to Wife on the basis of his inappropriate marital conduct, and, therefore, this conclusion by the Trial Court is final. Accordingly, we will discuss the facts only as they pertain to the property division and alimony award.

Husband graduated from high school and has one and one-half years of college education. He has worked at Bowater for almost 16 years and earns approximately $61,858.00 per year. At the time of trial, Wife was 44 years old and had a high school education. She had experience as a receptionist and a nursing assistance making $7.00 per hour before buying a floral business in 1997.

Wife testified she and Husband were married for about 10 years the first time, and obtained a divorce by "agreement" in 1994. Their relationship continued after the divorce and they remarried in 1996. Wife and Husband borrowed approximately $43,000.00 to purchase a floral business and stock it with inventory. Wife testified they have been able to make only interest payments on the loan and have not yet started paying on the principal. According to Wife, although the business has not made a profit as of yet, it has done remarkably well and is an established business with a growing clientele. Any extra money is reinvested into stock or improvements in the building. Wife claimed that if she were to sell the inventory, the proceeds would be enough to pay off the $43,000.00 debt, but no more. Neither Wife nor Husband have paid themselves anything of any consequence from the business. Wife estimated she would be able to start paying herself a salary in about two years. The gross sales from the floral business in 1999 were $119,000.00.

In their first divorce, Wife received the marital residence which the parties began building in 1990 and which virtually was completed by the time of the first divorce. This house was built on land owned by Wife's parents. Wife valued the house at $150,000.00 as of the date of the first divorce. Both Wife and Husband agreed that it was worth $175,000.00 at the time of the trial for the second divorce. Husband testified they could realize $175,000.00 out of the home, pointing out that they "put over $100,000 in materials in it ten years ago and every year improved it." Wife claimed that during their first marriage, it was her and Husband's understanding that one day, Wife's parents would deed the land to her as an inheritance since she was their only child. The land was deeded to both Husband and Wife during the second marriage. Wife testified that Husband asked her parents to deed the land to them, and her parents complied with his request. Husband testified that Wife's parents initiated the discussions about deeding the land to both of them. Husband stated that even at the time of the first marriage, he knew that Wife's parents were going to give them the land on which the house was located.

Wife filed an income and expense statement with the Trial Court. In that statement, there is no mortgage payment listed, although the loan for the floral business is apparently secured

with the house as collateral. Wife listed no monthly income. Her listed monthly expenses totaled $1,765.00. Wife's expenses on the income and expense statement included $300.00 per month for a car payment and $200.00 per month for health insurance. Wife's monthly expenses did not include the interest payments being made on the floral business which were being paid out of money generated from that business. Wife claimed she needed alimony for 18 months to two years before she would be able to become self-sufficient with the floral business.

The parties agreed in the first divorce that Wife be awarded the marital residence along with the indebtedness to Wife's parents as the parties had borrowed approximately $46,000.00 from them to complete the house. The parties further agreed that Husband would retain a $10,000.00 interest in the house which Wife would have to pay upon her remarriage or if the house was sold. It also was agreed that Husband would receive as his property his pension, profit sharing, and any other retirement he had through his employer, Bowater. One year before the second marriage began, Husband had $30,000.00 in his 401K account with Bowater.

The Trial Court determined the value of the marital residence prior to the second marriage was $150,000.00, and that it was Wife's separate property pursuant to the previous divorce decree, subject to Husband's $10,000.00 interest. Since the parties agreed that the current value of the house with the land was $175,000.00, the Trial Court determined that the $25,000.00 increase was marital property. At the time of trial, Husband's 401K account was valued at $94,000.00. Based on Husband's testimony that his 401K was worth $30,000.00 one year prior to the beginning of the second marriage, the Trial Court divided the $64,000.00 increase in that account equally with each party receiving $32,000.00. The Trial Court awarded the house to Wife, along with the debt to her parents. Husband was given a lien on the house for $11,627.00.[1] Wife was awarded the floral shop and responsibility for the $43,000.00 loan. The Trial Court ordered Husband to pay $768.65 in rehabilitative alimony for a period of 12 months. He also was ordered to pay Wife's car payment for 12 months, and to pay for her health insurance for the 18 month period in which she was eligible to remain on his health care plan pursuant to COBRA. The Trial Court also awarded Wife $2,500.00 in attorney fees.

Husband appeals arguing that: (1) the property division was not equitable; (2) the award of alimony was improper; (3) the Trial Court erred in awarding Wife $2,500.00 in attorney fees; and (4) the Trial Court erred in determining that the value of the 401K immediately prior to the beginning of the second marriage was $30,000.00.

## Discussion

---

[1] As indicated above, Husband was awarded a $10,000 interest in the home in the divorce decree from the first marriage. Thus, Husband has a total interest of $21,627.00 in the home.

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo*, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

With regard to the Trial Court's division of the marital assets, the many factors to be considered by a court in making an equitable distribution of property are set forth in Tenn. Code Ann. § 36-4-121(c), and include age, physical and mental health, employability, the contribution of a party to the marriage as homemaker, tax consequences, etc. A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998), when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

In his brief on appeal, Husband claims that Wife was awarded $231,152.47 in property, but he was awarded only $61,377.00. Wife claims in her brief that each party received $53,877.00 in property. Since there is no dispute as to which party was awarded what particular item, it appears the main disagreement between the parties centers around the values to be placed on the property awarded and on the determination of what was and was not marital property.

First, we address the value of the house awarded to Wife. Husband apparently believes that because Wife's parents deeded the land on which the house is sitting to both of them during the second marriage, then he automatically is entitled to one-half of the *entire* current value of the house and land as marital property. This argument completely ignores the fact that after the first marriage ended, Wife received the house (with no land) subject to Husband's $10,000.00 interest. The difference in the value of the house with no land immediately before the second marriage, and the value of the house with the land at the end of the second marriage is marital property. The parties agreed that the current value of the house with the land is $175,000.00. Therefore, the only valuation as to this property to be made by the Trial Court was the value of the house immediately before the second marriage started. Wife testified that at the end of the first marriage, the house was worth $150,000.00. Husband presented no proof whatsoever as to the value of the house before the second marriage, but did admit they "put over $100,000 in materials in it ten

-4-

years ago and every year improved it." There was no expert proof presented on this issue. Given this testimony, we are unable to conclude that the Trial Court erred when it determined that the house was worth $150,000.00 prior to the start of the second marriage, and the house and land at the time of trial were worth $175,000.00.

When arguing that the property was not equitably divided, Husband improperly assigned the entire value of the house as property awarded to Wife from this divorce, including the value which constituted Wife's separate marital property from the first divorce. This accounts for the vast majority of Husband's claimed disparity in the property awarded to the parties. More importantly, given that Wife was awarded the house in the first divorce as her sole property, we find nothing inequitable in the Trial Court's decision concerning the division of this property, even if the house and not just the land was marital property, in this short duration second marriage.

Wife also was awarded the floral business. Husband claims this was a $43,000.00 asset awarded to Wife. The Trial Court, however, concluded that while the floral shop was worth $43,000.00, there was a $43,000.00 indebtedness on that business leaving a net value of $0.00. At trial, Wife testified that if she sold the inventory, the proceeds would be sufficient to pay off the indebtedness, but no more. Husband offered no testimony, either in the form of opinion or expert testimony, as to what value should be placed on the floral shop. We cannot conclude that the Trial Court improperly valued the floral shop at $0.00 when the Trial Court relied upon the only testimony actually offered on that subject. Husband has artificially inflated the amount of property awarded to Wife by $43,000.00 and has offered no proof that the Trial Court's assigned value was incorrect.

A trial court is required to divide the property equitably. The division of marital property is not inequitable simply because it is not mathematically equal. *Cohen*, *supra*. On appeal, Husband assigns inflated values to the assets awarded to Wife, and then argues that the property was not equitable divided. The inflated value assigned by Husband to these two assets alone exceeds $161,000.00. When the proper value assigned to these assets by the Trial Court is considered, we cannot conclude that the division of marital assets was inequitable. This is particularly so given the award to Wife of the house in the first divorce. We affirm the Trial Court's division of marital assets.

Husband challenges the alimony award to Wife. Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996).

Determinations concerning the amount and duration of alimony are factually driven and require a balancing of the various factors contained in Tenn. Code Ann. § 36-5-101(d)(1). *Herrera v. Herrera*, 944 S.W.2d 379, 387-88 (Tenn. Ct. App. 1996). These factors include:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Although all of these factors are relevant, when "addressing an *initial* award of support, the need of the spouse must necessarily be the most important factor to consider, because alimony is primarily intended to provide some minimal level of financial support for a needy spouse." *Bogan v. Bogan*, ____ S.W.3d _____, 2001 WL 1386102 at *5 (Tenn. 2001).

The Trial Court found that Wife had the ability to earn $1,204.00 in gross monthly wages, or $996.35 per month after taxes. Neither party appeals this determination. Wife testified she would be able to be self sufficient in 18 months to two years. The Trial Court obviously determined she could become self sufficient in approximately one year. Wife does not appeal either the amount or length of the alimony awarded.

The Trial Court awarded alimony based on Wife's claimed monthly expenses of $1,765.00, less the amount of her earning potential of $996.35, for a total award of $768.65 per month for 12 months. In addition to the alimony awarded, Husband also was required to make the payment for 12 months on the vehicle awarded to Wife. Husband also was required to pay Wife's health insurance premiums for the 18 month period in which she was able to remain covered on Husband's health care plan pursuant to COBRA.

Our concern with the amount of alimony awarded by the Trial Court is two-fold. First, Wife claimed on her monthly expenses an estimated monthly car payment of $300.00. Second, she claimed health insurance costs of $200.00.[2] By requiring Husband to make these payments separate and in addition to the $768.65, Wife is "double-dipping" because she also is being awarded these very same expenses with the alimony award.

After taking into account the facts of this case as contained in the record and after "careful[ly] balanc[ing] . . . the factors in Tenn. Code Ann. § 36-5-101(d)(1)," we hold that the Trial Court's award of rehabilitative alimony is reduced from $768.65 to $400.00 per month for 12 months. *See Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998). In making this reduction, we give primary consideration to Wife's needs, but also consider all other relevant factors such as Husband's ability to pay; their relative educational levels, income, expenses, and earning capacities; and the division of marital property.

Attorney fee awards are treated as alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). In determining whether to award attorney fees, a trial court should consider the relevant factors set forth in Tenn. Code Ann. § 36-5-101(d)(1), *supra*. Awards of attorney fees are within the sound discretion of the trial court, and will not be disturbed on appeal unless the evidence preponderates against the award. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). Applying the relevant factors, we hold the Trial Court did not commit reversible error when it awarded Wife $2,500 in attorney fees.

Husband's final issue on appeal is his claim that the Trial Court improperly valued his 401K. At trial, Husband testified that the value of the 401K one year prior to the second marriage was $30,000.00. Husband offered no evidence on the value of the 401K one year later on the date the parties were remarried. The Trial Court concluded, based on the only reliable evidence submitted, that the value of the 401K on the date the parties remarried was $30,000.00. Approximately one month after the Trial Court entered its Judgment, Husband apparently located

---

[2] This does not include costs for medical expenses which was listed separately.

documentation showing that the value of the 401K at the time of the second marriage was actually $36,125.70. Relying on this newly discovered evidence, Husband filed a motion to modify the judgment to reflect the correct pre-marital value of the 401K. The Trial Court denied the motion, concluding that Husband was bound by his testimony at trial.

We hold that the Trial Court did not err in denying Husband's motion to alter or amend the judgment. Husband claims in his motion that this information was unavailable at trial, but offers no explanation as to why it was unavailable or what efforts he undertook to make it available at trial. We find no error in the Trial Court's denial of Husband's motion to alter or amend based on this issue.

The only claim made by Wife on appeal is a request for her attorney fees associated with this appeal. We decline to award Wife attorney fees on appeal.

### Conclusion

The judgment of the Trial Court is affirmed as modified. This case is remanded to the Trial Court for further proceedings as may be required, if any, consistent with this Opinion, and for collection of costs below. Costs of appeal are taxed one-half to the Appellant, James Michael Cantrell, and his surety, and one-half to the Appellee, Pamela K. Cantrell.

_____
D. MICHAEL SWINEY

-8-