IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 12, 2005 Session

## ALMA EDNA SMITH v. DON EDWARD SMITH

**Appeal from the Chancery Court for Union County**
**No. 4565      Billy Joe White, Chancellor**

_____

**No. E2004-02206-COA-R3-CV - FILED JULY 20, 2005**

_____

Alma Edna Smith ("Wife") sued Don Edward Smith ("Husband") for divorce. The Trial Court entered its Final Decree on July 20, 2004, finding and holding, in part, that both parties were entitled to a divorce and that Wife was to be awarded various items of personal property and the marital home with Husband to assume the indebtedness on this property. Husband received two other parcels of real property and certain items of personal property. Husband appeals the division of property. We modify the Trial Court's property division in this short duration marriage as it concerns the marital home, and we affirm as so modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and SHARON G. LEE, J.J., joined.

John D. Lockridge, Knoxville, Tennessee, for the Appellant, Don Edward Smith.

David H. Stanifer, Tazewell, Tennessee, for the Appellee, Alma Edna Smith.

# OPINION

## Background

Husband and Wife were married on December 24, 1998. No children were born of this marriage. In January of 2004, Wife sued for divorce alleging, among other things, inappropriate marital conduct. Husband answered the complaint and filed a counter-complaint. The case was tried in June of 2004.

At trial, Wife testified she was 52 years old with a high school diploma and work experience consisting mostly of bookkeeping. Husband testified he was 67 years old at the time of trial and that he has an undergraduate degree from Northwestern University and a business degree from Harvard Business School.

Husband testified that he acquired a piece of commercial property in Knox County ("the commercial property") in 1986, years before he and Wife met. Husband receives rent from the lease of this property.

Wife and Husband met when she began working for him in February of 1994. The date when an intimate relationship between the parties began is in dispute. Wife testified the relationship began in 1994, several months after she started working for Husband. Wife also testified that she and Husband rented an apartment and began living together in 1995. Husband testified their relationship did not start until late 1996 or early 1997. However, Husband admitted that he made a will in September of 1995 leaving all of his assets to Wife, despite the fact that Husband has a child from a previous relationship. Wife testified that she stopped working in 1995 at Husband's insistence, and that they lived on Husband's income from that time forward.

In August of 1998, prior to their marriage, Husband and Wife purchased a house in Union County ("the marital home") for approximately $158,000. The marital home was titled in both of their names. Husband testified that the mortgage on the marital home is in his name only and that a balance of approximately $147,000 was owed on this mortgage. An appraisal introduced at trial showed a current value of the marital home of $225,000.

Husband testified that at the time they married, he had IRAs with an approximate balance of $100,000 and life insurance policies with cash values in excess of $30,000. Husband further testified that during the marriage, he spent all but approximately $8,000 from his IRAs to remodel the marital home, pay some credit card debt, and purchase the car Wife drives, a boat, a floating cottage, and some yard equipment. Husband testified he spent approximately $95,000 from his IRAs and insurance policies remodeling the marital home. Wife acknowledged that Husband spent approximately $90,000 on the marital home.

During the marriage, in addition to various items of personal property, Husband and Wife acquired an undeveloped tract of land in Anderson County ("the Anderson County property"). Husband testified that they purchased the Anderson County property for $80,000 and still owed $79,700 on it. An appraisal introduced at trial showed a current value of $50,000 for this property.

On December 22, 2003, Husband conveyed a one-half interest in the commercial property to Wife. Husband testified that he made this conveyance at Wife's insistence. Five days later, the parties separated, and Wife filed her complaint for divorce on January 9, 2004.

After the trial, the Trial Court entered its Final Decree on July 20, 2004, finding and holding, *inter alia*, that both parties were entitled to a divorce and that Wife was to be awarded the marital home with Husband to assume the indebtedness on this property, and that Husband was to be awarded the Anderson County property, the commercial property, and certain items of personal property. Husband appeals to this Court.

## Discussion

Although Husband and Wife state the issue differently, the dispositive issue on appeal is whether the Trial Court's overall property division was equitable.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Courts must look to Tenn. Code Ann. § 36-4-121 when determining how to distribute property in a divorce. In pertinent part, Tenn. Code Ann. § 36-4-121 provides:

(b) For purposes of this chapter:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing . . .

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, . . .

\* \* \*

(D) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

* * *

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage;

* * *

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties. . . .

Tenn. Code Ann. § 36-4-121 (2001).

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 Tenn. App. LEXIS 100, at *11-12 (Tenn. Ct. App. Feb. 9, 1998), *no appl. perm. appeal filed)*.

"In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). In *Batson*, this Court found that a marriage of a little over five years was a marriage of relatively short duration. *Id*. at 859-60. Wife argues, in part, that the entire duration of the parties' relationship, including their time together before they were married, should be considered in determining whether or not this is a marriage of short duration. Unfortunately for Wife's position, the statute, as discussed, does not talk about the "course of the relationship" or the "duration of the relationship" but instead reads the "course of the marriage..." and the "duration of the marriage...." Tenn. Code Ann. § 36-4-121 (2001). We believe it abundantly clear that the intent of the Legislature in enacting this statute concerning the equitable division of marital property was that only the period of time the parties were married is the relevant time frame under the statute. This being so, the marriage here also is of a relatively short duration.

Husband specifically appeals the Trial Court's distribution as to the marital home. However, as "the justness of a particular division of the marital property and allocation of marital debt depends on its final results," we must look at the overall division of property. *King,* 986 S.W.2d at 219. We note that Husband entered the marriage with existing assets of the commercial property, IRAs with an approximate balance of $100,000, life insurance policies with cash values in excess of $30,000, and a one-half interest in the marital home. Wife entered the marriage with a one-half interest in the marital home. During the marriage, the parties acquired the Anderson County property.

While the goal in the property division in this short duration marriage is to place the parties in the position they would have been in had the marriage never taken place, the reality is that the best the courts can do in this case is to do so "as nearly as possible...." *Batson*, 769 S.W.2d at 859. Such a goal is made more difficult as the parties' financial investments in certain properties such as the Anderson County property and the marital home are more than the appraised value of those properties. We note, for example, that the parties owe on the Anderson County property nearly what they paid to acquire it and that the appraisal introduced at trial shows that this property is worth less than what still is owed on it.

We further note that the evidence shows that the marital home was purchased by the parties jointly before the marriage for $158,000 and that a balance of approximately $147,000 still is owed on the mortgage. An appraisal introduced at trial shows a current value for the marital home of $225,000. However, the evidence also shows that during the marriage, Husband spent approximately $90,000 out of his separate property on improvements to the marital home. Thus, the evidence shows that the balance due on the mortgage plus the money Husband spent on remodeling add up to more than the appraised value of the marital home.

Further, the evidence shows that Husband placed Wife's name on the deed to the commercial property mere days before Wife filed for a divorce. The evidence in the record preponderates against a finding that Wife made any significant contribution to the preservation or appreciation of the value of the commercial property. Wife argues that the lease payments on the commercial property should be classified as marital property because she contributed to negotiating a higher lease payment. Wife relies upon the provision of Tenn. Code Ann. § 36-4-121 that provides that marital property includes "any increase in value during the marriage of, property determined to be separate property . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(B) (2001). However, the record is devoid of any evidence showing the value of the commercial property prior to the marriage. Wife's expert did appraise the commercial property. This expert placed a value, as of the time of the trial, on the property of $75,000 for the building and $300,000 for the land, but he did not testify concerning any increase in the value of the commercial property. Thus, there is no evidence in the record of any increase in the value of the commercial property and, therefore, no evidence of any significant contribution by Wife to an increase in the value of the commercial property.

We find no error in the Trial Court's distribution of the Anderson County property and the commercial property to Husband. Nor, do we find any error in the distribution of the personal property.

We do, however, find that the award to Wife of the marital home with Husband to assume the entire indebtedness made the overall property distribution inequitable. Wife and Husband each owned an equal interest in the marital home pre-marriage. However, the evidence shows that during this short duration marriage Husband spent approximately $90,000 of his separate funds to remodel the marital home. We, therefore, vacate that portion of the Trial Court's July 20, 2004 Final Decree that awarded to Wife the marital home with Husband to assume the indebtedness on this property. We modify the July 20, 2004 Final Decree to hold that Wife is given the option to buy Husband's one-half interest in the marital home if, and only if, the parties mutually agree within thirty (30) days of the entry of this Court's Mandate on a purchase price and all other terms relative to the purchase by Wife of Husband's one-half interest in the marital home. If the parties do not arrive at such a mutual agreement, the marital home is to be sold and the proceeds are to be used first to satisfy the mortgage, then to reimburse Husband any amounts paid by him on the mortgage since the entry of the Trial Court's July 20, 2004 Final Decree, with any remaining proceeds divided and distributed 60% to Husband and 40% to Wife.

We acknowledge that this property distribution does not place the parties in the exact same position each would have been in had the marriage never taken place, but we believe that it does so as nearly as possible given the facts of this case. The July 20, 2004 Final Decree is modified to reflect this distribution, and is affirmed as modified.

### Conclusion

The judgment of the Trial Court is affirmed as modified, and this cause is remanded to the Trial Court for further proceedings as necessary, if any, consistent with our Opinion and for collection of the costs below. The costs on appeal are assessed one-half against the Appellant, Don Edward Smith, and his surety and one-half against Alma Edna Smith.

_____
D. MICHAEL SWINEY, JUDGE