IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 15, 2005 Session

# MIRACLE KAA NICHOLS v. JAMES VIRGIL NICHOLS, JR.

**Appeal from the General Sessions Court for Loudon County**
**No. 8702     William H. Russell, Judge**

**No. E2004-02486-COA-R3-CV - FILED NOVEMBER 7, 2005**

In July of 2002, Miracle Kaa Nichols ("Wife") sued James Virgil Nichols, Jr. ("Husband") for divorce. The case was tried and a Final Decree was entered in September of 2004 awarding, *inter alia*, Wife a divorce, and finding and holding that the real property located at 24766 Martel Road in Lenoir City, Tennessee ("the Farm") was marital property and should be divided with each party to receive "one-half the value of the land and mobile home." Husband appeals claiming that the Trial Court erred in classifying the Farm as marital property, or, in the alternative, that the Trial Court erred by failing to divide the marital estate equitably. Wife also appeals the marital property division. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Jerrold L. Becker and Samuel W. Brown, Knoxville, Tennessee, for the Appellant, James Virgil Nichols, Jr.

Kimberlee A. Waterhouse, Lenoir City, Tennessee, for the Appellee, Miracle Kaa Nichols.

## OPINION

## Background

Husband and Wife were married in 1986. Two minor children were born of the marriage. As the only issues raised in this appeal concern the division of property, we confine our discussion to those facts relevant to those issues.

The parties lived in Atlanta during the first eight or ten months of their marriage. They moved to the Farm in 1987 or 1988, at the request of Husband's father to help take care of Husband's father who was ill. The Farm consists of approximately 41 acres of land that Husband testified has belonged to his family for approximately 85 years. Prior to his death, Husband's father deeded the Farm to Husband. Wife testified that she has lived on the Farm for 18 or 19 years and that she considers it her home. She stated: "That is our home. The kids were conceived there, and [Husband] brought me there and told me it would be my home, and I want to stay." Wife admitted that she could make do with half of the Farm. Husband admitted that the Farm is Wife's and the children's home.

Prior to February of 1996, the Farm property included a house, a barn, a shed, and a sawmill. Wife testified that the parties also put up some fencing and that Husband built a big garage on the Farm. The parties lived in the house on the Farm until February of 1996, when the house was destroyed in a fire. Wife testified that the parties were going to rebuild the house, but never made much progress in doing so. She testified that they did have some concrete poured and laid a block basement for the new house. On February 26, 1996, after the fire, Husband deeded the Farm to himself and Wife. He stated that he did so at Wife's request and that he and Wife were separated at the time. Wife admitted that she asked Husband to put her name on the deed after the fire. She testified that Husband left after the fire and the parties were separated for a few months before Husband moved back home. Husband testified that no improvements were made to the Farm after he deeded the property to himself and Wife.

Husband collected $40,000 in insurance money as a result of the fire. He used $16,000 of this money to purchase a mobile home that is titled solely in Wife's name. Wife and the parties' children currently reside in this mobile home on the Farm. Husband testified that he used the remaining money to pay marital bills and to buy a dishwasher, and a washer and dryer for the mobile home. Wife testified that Husband also purchased a new bed for her. Wife further testified that Husband bought a computer for the family for Christmas just before he left, and that he purchased a 1996 Jeep Cherokee for Wife for their tenth anniversary. Wife also testified that the parties purchased farm equipment, tools, tractors, a bulldozer, a dump truck, and a skid steer loader over the years. Wife testified that since Husband left, she has maintained the tractor and the small bobcat and has "had to mow and keep things clean and stuff …."

Husband testified that the parties signed a prenuptial agreement drafted by Husband's father. Husband stated: "It was an agreement that it stated that if the farm was ever in contention that [Wife] wouldn't have a part of it." Wife admits she signed some document Husband's father drafted "because he was afraid I was marrying [Husband] to take all the property, I guess." Husband testified that to his knowledge there was a copy of the prenuptial agreement in the parties' safety deposit box and one in the house. Neither copy was located after the fire. Wife admitted that she visited the safety deposit box in February of 1996, shortly before the fire, and again in March of 1996, shortly after the fire.

Wife testified that when Husband started EMT school, "he lost all interest in us, period." Wife testified that Husband spent a lot of time on his computer meeting women who would later call Husband. Wife also testified that she found a "really sexy and fun …" Valentine's Day card purchased by Husband and that Husband later told her he gave this card to a woman at the bank.

Wife, who was 42 years old at the time of trial, testified that she is in excellent health. She completed high school and worked in the pharmacy at K-mart for approximately eight years before the parties married. After the parties' first child was born, Wife quit work to stay at home and did so for approximately 14 years. Wife keeps a number on animals on the Farm including dogs, cats, chickens, goats, pot belly pigs, turkeys, horses, cows, a sheep, and a burro. Wife currently is employed full-time at the Loudon County Animal Shelter as an animal control officer.

Wife testified that she owns a piece of real property comprised of two unimproved city lots, which she and her mother purchased in 1979 or 1980, before Wife married Husband. Wife also testified that she owns a Ford Ranger truck that she purchased with money she inherited from her mother, and a 1979 Lincoln Town car that she inherited from her mother.

Husband, who was 43 years old at the time of trial, is employed as a firefighter by Lenoir City Fire Department. Husband testified that he left Wife because "the house was in fairly disarray" and because Wife's sister and Wife "circumvented" his ability to parent his children and "alienated me from my parental process." Wife admitted that she is not a "great housekeeper."

Husband left Wife in April of 2002, and admitted that from April until December of that year, he did not pay child support, pay any marital debt, check on his farm equipment, call his children, send Christmas or birthday presents, or provide Wife and his children any food or clothing. Husband stated: "I didn't just walk out. I informed them of why I walked out."

Husband admitted that he purchased a brand new motorcycle for $8,800 approximately one month after he left Wife. Husband testified that he used the motorcycle to take vacations and to travel to different states. Husband testified that he wrecked his motorcycle while on vacation in South Dakota in August of 2003. Husband received insurance money for it and made $1,000.

Husband admitted that he met a woman from Texas on-line and that he has made trips to Texas to see her and has purchased gifts for her. In addition, Husband testified he currently is living with another woman. Husband admitted that in August of 2002, he purchased a half-carat diamond ring for $699. He stated: "It was for [Wife], but it's not now." Husband further testified that in September of 2002, after he left Wife, he purchased a stereo system for $540, and in October of 2002, he purchased an X-box video game platform for himself for $467.48.

After trial, the Trial Court entered a Final Decree on September 27, 2004 granting, *inter alia*, Wife a divorce from Husband on the grounds of inappropriate marital conduct, and finding and holding that the Farm is marital property and that it

> shall be equally divided between the parties such that each party shall receive one-half the value of the land and mobile home. The parties shall share equally the cost of a survey to set the boundary line and a fence to run the boundary line between the parties' respective sides of the property. The [Wife] shall receive the side of the property where the mobile home and other structures are located. The [Husband's] side shall include more road frontage than [Wife's] side so as to offset for the value of the mobile home awarded to [Wife.]

The Final Decree also, among other things, divided items of personal property and awarded each party "one-half of the pension, 401(k) an[d] any other retirement plan or benefits of the other party as of the date of the divorce." Husband appeals to this Court. Wife also appeals the marital property division.

## Discussion

Husband raises two issues on appeal: 1) whether the Trial Court erred in classifying the Farm as marital property; and, 2) in the alternative, whether the Trial Court erred by failing to divide the marital estate equitably. Wife also raises an issue regarding whether the Trial Court erred by failing to equitably divide the personal property portion of the marital estate.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first will consider whether the Trial Court erred in classifying the Farm as marital property. As relevant to this appeal, Tenn. Code Ann. § 36-4-121(b) provides the following definitions of marital and separate property:

> (1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the

-4-

course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.… All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

\* \* \*

(D) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

\* \* \*

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

> (D) Property acquired by a spouse at any time by gift, bequest, devise
> or descent ….

Tenn. Code Ann. § 36-4-121(b) (2001).

Our Supreme Court had occasion to discuss the concepts of marital property and separate property in *Langschmidt v. Langschmidt*, 81 S.W.3d 741 (Tenn. 2002). In *Langschmidt*, the Supreme Court noted that in addition to the statutory provisions contained in Tenn. Code Ann. § 36-4-121(b), Tennessee intermediate appellate courts have recognized two methods by which separate property may be converted into marital property. *Id*. at 747. These two methods are commingling and transmutation, which the Supreme Court noted have been described by this Court as follows:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur.... [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property.... The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt*, 81 S.W.3d at 747 (citations omitted).

Husband argues, in part, that "[t]here is simply insufficient proof in the record, in light of the clear intention as evidenced by the prenuptial agreement, that [he] intended to make a gift [of the Farm to the marital estate.]" We disagree. First, no prenuptial agreement ever was produced and although neither party disputes that Wife signed some document drafted by Husband's father regarding the Farm some years earlier, this document apparently no longer exists. Second, years after Wife signed the purported prenuptial agreement, Husband specifically deeded the Farm to himself and Wife. Husband certainly was free to change his mind during the intervening years between when the purported prenuptial agreement was signed and when Husband deeded the Farm to himself and to Wife, and apparently he did so. Husband was free to make a gift to the marital estate, whether a prenuptial agreement existed or not. Third, Husband admits that the Farm is Wife's home.

The evidence supports the Trial Court's finding that the Farm was transmuted from Husband's separate property into marital property, thus raising a rebuttable presumption that

Husband made a gift of the Farm to the marital estate. The record is devoid of evidence showing any circumstances or communications that occurred at the time Husband made the gift to the marital estate or subsequent thereto, which clearly indicate Husband's intent that the Farm remain his separate property. As Husband made the gift well after the purported prenuptial agreement was signed, the prenuptial agreement cannot serve as evidence of Husband's intent at the time of the transfer to keep the Farm as his separate property. Husband failed to rebut the presumption of a gift to Wife, and, therefore to the marital estate. The evidence does not preponderate against the Trial Court's finding that the Farm is marital property, and we, therefore, affirm the Trial Court's finding that the Farm is marital property.

We next will consider whether the Trial Court failed to divide the marital estate equitably. When determining how to distribute property in a divorce, courts must look to Tenn. Code Ann. § 36-4-121. In pertinent part, Tenn. Code Ann. § 36-4-121(c) provides:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>
> (6) The value of the separate property of each party;
>
> (7) The estate of each party at the time of the marriage;
>
> (8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2001).

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 Tenn. App. LEXIS 100, at *11-12 (Tenn. Ct. App. Feb. 9, 1998), *no appl. perm. appeal filed)*.

In addition to Husband's issue concerning the division of the marital estate, Wife argues that the Trial Court erred in its division of the marital personal property. Wife, however, ignores the fact that the goal is to render an equitable division of the entire marital estate and not an equitable division of each and every item or type of marital property.

Some of the factors contained in Tenn. Code Ann. § 36-4-121(c) weigh equally for Husband and Wife, while others tend to favor Wife and yet others tend to favor Husband. Our review of the entire record in this case convinces this Court that the Trial Court properly considered all relevant factors when distributing the marital estate. We hold the Trial Court did not abuse its discretion when distributing the marital estate. The Trial Court's overall distribution of the entire marital estate is equitable, and, therefore, is affirmed.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed equally against the Appellant, James Virgil Nichols, Jr., and his surety, and the Appellee, Miracle Kaa Nichols.

_____
D. MICHAEL SWINEY, JUDGE