# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### SEPTEMBER 13, 2007 Session

## ANTHONY JOSEPH ZIOBROWSKI v. MARCY HAYS ZIOBROWSKI

**Direct Appeal from the Circuit Court for Williamson County**
**No. 95160     Russ Heldman, Judge**

---

**No. M2006-02359-COA-R3-CV - Filed December 20, 2007**

---

This appeal involves a final decree of divorce that was entered in 1995, and a proposed qualified domestic relations order ("QDRO") entered pursuant to that decree in 2006. The former husband claims that the proposed QDRO allows his former wife to receive a greater share of his monthly retirement benefit than the trial court awarded to the wife when it divided the parties' marital property. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which and DAVID R. FARMER, J., joined, AND HOLLY M. KIRBY, J., dissented.

A. Allen Smith, III, Goodlettsville, TN, for Appellant

Virginia Lee Story, Franklin, TN, for Appellee

**OPINION**

# I. FACTS & PROCEDURAL HISTORY

On October 2, 1995, Anthony Joseph Ziobrowski, III, and Marcy Hays Ziobrowski were divorced by a decree entered by Judge Donald P. Harris in the Circuit Court for Williamson County. The final decree of divorce incorporated a memorandum, which, relevant to this appeal, valued and divided the parties' marital property as follows:

> 5. MARITAL ESTATE. The court finds the marital property of the parties to be as follows:
>
> . . .
>
> | | |
> |---|---|
> | Saturn Retirement | $7,652.98 |
> | Saturn Individual Savings Plan (net value) | $3,625.19 |
> | GM Pension Benefit | Not discernable |
> | Household furnishings | Not discernable |
> | Ziobrowski vs. Westra (cause of action) | Not discernable |
>
> . . .
>
> 7. PROPERTY DIVISION. The home of the parties shall be sold. From the proceeds of the sale . . . all indebtedness of the parties . . . shall be paid. . . . *Thereafter, the next $11,493.77 shall be paid to wife. This amount represents the values of the Saturn Retirement and Individual Savings Plans ($11,278.17)* plus the difference in net values of the vehicles each will receive ($215.60). Provided the proceeds are sufficient to pay wife this amount, *the Saturn Retirement and Individual Savings Plans shall be awarded to husband free of any claim by wife.* If the proceeds of sale are not sufficient to pay her this amount, husband shall pay to her the difference and wife shall have a lien on the Saturn plans to secure payment. . . .
>
> > . . .
>
> The value of the parties' household furnishings, the GM retirement benefits (old) and the cause of action, Ziobrowski vs. Westra, are not discernable. The court intends an equal division of these assets. Such a division is made exceedingly difficult due to the fact the value of the cause of action is highly speculative and a substantial part of that cause of action represents [damages] that are not marital assets. . . . Accordingly, wife shall be awarded all the household furnishings except for [certain items awarded to husband]. Since the court is of the opinion this division gives the bulk of the household furnishings to wife, husband shall be awarded the cause of action styled Ziobrowski vs. Westra. *Wife is awarded one-half of the $676.60 monthly benefit payable on account of the old General Motors retirement account. Husband shall have prepared a qualified domestic relations order that shall cause one-half of this monthly benefit to be paid to wife.*

(emphasis added). The final judgment incorporating the memorandum was not appealed and became final thirty days after entry. However, the proposed QDRO that would provide for Ms. Ziobrowski to receive one-half of the GM monthly retirement benefit was never prepared. Apparently, the QDRO matter was not addressed until ten years after the divorce, when Mr. Ziobrowski began to contemplate early retirement because of health problems.

The first relevant document in the record before us is an "Objection to Qualified Domestic Relations Order" filed by Mr. Ziobrowski on March 31, 2006, in Williamson County Circuit Court, basically alleging that a proposed QDRO submitted by Ms. Ziobrowski was inconsistent with the final divorce decree. Mr. Ziobrowski requested that the court conduct a hearing before entering a QDRO, and a hearing date was set, but there is no transcript of a hearing in the record. On June 21, 2006, Circuit Court Judge Russ Heldman ordered Mr. Ziobrowski to comply with the final divorce decree by submitting an appropriate QDRO within ten days. On July 10, 2006, Ms. Ziobrowski filed a "Motion for Contempt; and Motion for Entry of Wife's Proposed QDRO." On July 12, 2006, Mr. Ziobrowski filed his proposed QDRO and responded to the motion for contempt, explaining that his attorney had been out of town. We are unable to find a copy of Mr. Ziobrowski's proposed QDRO in the record.

On July 28, 2006, Judge Heldman signed and approved a proposed QDRO, which provided for Ms. Ziobrowski to receive "50% of [Mr. Ziobrowski's] accrued vested benefit as of September 27, 1995, or the next closest valuation date." It appears that the proposed QDRO signed by Judge Heldman was prepared by Ms. Ziobrowski's attorney, but both parties filed motions to alter or amend. Mr. Ziobrowski claimed that pursuant to Ms. Ziobrowski's proposed QDRO, she would be receiving over one thousand dollars per month from the GM retirement fund, rather than one half of $676.60, as awarded in the divorce decree. Mr. Ziobrowski explained that his current benefit under the GM plan was larger than it was at the time of the divorce because GM and Saturn had since merged his three retirement accounts into the one GM plan. Mr. Ziobrowski sought an opportunity to present the testimony of various representatives of Saturn, if necessary, regarding the changes in the retirement plans.

In response, Ms. Ziobrowski claimed that "[w]hat has happened at Husband's employer since the time of divorce has no bearing in the matter at hand." She also claimed that the figure in the divorce decree was only an "estimate of a future benefit" because Mr. Ziobrowski was not eligible to draw retirement at that time. Finally, she claimed that if there had been a change in the estimated value of the pension, Wife should receive the increased benefit because it was Mr. Ziobrowski who failed to enter the QDRO earlier.

On August 31, 2006, Judge Heldman signed and approved a second proposed QDRO and an Amended QDRO, each with slightly different terms, but again providing that Ms. Ziobrowski would receive "50% of [Mr. Ziobrowski's] accrued vested benefit as of September 27, 1995, or the next closest valuation date." It appears that both of these proposed QDRO's were prepared by Ms. Ziobrowski's attorney. The trial court subsequently entered an order denying the motion to alter or amend. Mr. Ziobrowski filed a timely notice of appeal to this Court.

## II. ISSUES PRESENTED

Appellant presents the following issues for our review, which we slightly restate:

1. Whether Ms. Ziobrowski's marital share of the old GM retirement account is equal to $338.30 and constitutes non-modifiable alimony *in solido*.
2. Whether Judge Heldman's acceptance of the proposed QDRO submitted by Ms. Ziobrowski improperly modified Judge Harris's award of alimony *in solido*.

Ms. Ziobrowski requests her attorney's fees on appeal. For the following reasons, we reverse the decision of the circuit court and remand for further proceedings. In addition, we decline to award attorney's fees to Ms. Ziobrowski.

## III. STANDARD OF REVIEW

"As with other written instruments, the interpretation of a judgment is a question of law." **Brewer v. Piggee**, No. W2006-01788-COA-R3-CV, 2007 WL 1946632, at *7 (Tenn. Ct. App. July 3, 2007) (citing *Crull v. Crull*, No. E2005-01430-COA-R3-CV, 2006 WL 770461, at *3 (Tenn. Ct. App. Mar. 27, 2006)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. The Award

Mr. Ziobrowski is correct in stating that alimony *in solido* is an award of a definite sum of money that is paid in a lump sum or in installments over a definite period of time, and it may not be modified. *See* **Broadbent v. Broadbent**, 211 S.W.3d 216, 222 (Tenn. 2006) (citing *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001)). "Alimony in solido may be awarded in lieu of or in addition to any other alimony award, *in order to provide support*, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5) (2005) (emphasis added). However, the memorandum incorporated by the final decree of divorce in this case clearly classified the GM retirement account as marital property of the parties, and it awarded Ms. Ziobrowski one-half of the monthly benefit in equitably dividing the marital estate, not as spousal support.

Nevertheless, like awards of alimony in solido, "court orders distributing marital property are not subject to modification." **Johnson v. Johnson**, 37 S.W.3d 892, 895 (Tenn. 2001) (citing *Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn. 1993)). Once a divorce judgment becomes final, the division of marital property is not subject to modification. **Sutton v. Sutton**, No. 03A01-9710-CH-000492, 1998 WL 331309, at *1 (Tenn. Ct. App. E.S. June 24, 1998). Here, the divorce decree became final thirty days following its entry on October 2, 1995. Therefore, the trial court's original

division of marital property could not be modified by a subsequent order. *See, e.g.*, **Sutton**, 1998 WL 331309, at \*1 (holding that a trial court considering a petition to modify alimony did not have the power to re-divide the marital property). This requires us to first determine what the trial court actually awarded in the memorandum incorporated by the final decree of divorce.

### B.     The Divorce Decree

"Judgments are to be construed like other written instruments, and the determinative factor is the intention of the court as gathered from all parts of the judgment." **Lagrone v. Lagrone**, No. 01A01-9603-CH-00125, 1996 WL 512032, at \*2 (Tenn. Ct. App. W.S.  Sept. 11, 1996) (citing *Branch v. Branch*, 35 Tenn. App. 552, 249 S.W.2d 581 (1952)). The construction given to a judgment should give force and effect to every word of it, if possible, and make its several parts consistent, effective, and reasonable. **Id.**

In the memorandum incorporated by the divorce decree, the court first awarded Ms. Ziobrowski $11,278.17 representing her interests in the Saturn retirement plan and the Saturn individual savings plan. Next, the court noted that the values of certain assets, including the GM retirement plan, were "not discernable." However, the court went on to assign a specific value to the GM retirement monthly benefit and equitably divide it, awarding Ms. Ziobrowski "one-half of the $676.60 monthly benefit payable on account of the old General Motors retirement account." Mr. Ziobrowski was ordered to prepare a proposed QDRO "that shall cause one-half of this monthly benefit to be paid to wife." We do not interpret this provision as merely reciting a useless "estimate" of what the benefit would be in the future. In plain language, it awarded Ms. Ziobrowski "one-half of the $676.60 monthly benefit payable on account of the old General Motors retirement account," without limitation. In **Cohen v. Cohen**, 937 S.W.2d 823, 831 (Tenn. 1996), our Supreme Court explained the difficulties encountered in dividing future retirement benefits and common equitable methods of doing so. "The choice of valuation method remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances." **Id.** Because of the limited record before us, it is unclear how the trial court reached this specific value for the GM monthly benefit. However, as previously discussed, Ms. Ziobrowski did not appeal the final divorce decree that valued the asset, and it became final in 1995. Therefore, we cannot address the issue on appeal.[1] The fact remains that the trial court did assign a value of $676.60 to the GM monthly retirement benefit, and the court awarded one-half of that monthly benefit, or $338.30, to Ms. Ziobrowski. This aspect of the court's division of marital property was not subject to modification or amendment by a subsequent order or QDRO.

### C.     The QDRO

---

[1] In her brief, Ms. Ziobrowski claims that it is Mr. Ziobrowski who is now attempting to "contest" the trial court's 1995 decree that classified and divided the marital property, and that he has waived his arguments by not appealing the final divorce decree within thirty days. We do not see how Mr. Ziobrowski's appeal could be characterized as an attempt to contest the divorce decree, and we find no merit in Ms. Ziobrowski's claim that this Court "lacks the jurisdiction to hear this matter."

In his motion to alter or amend, Mr. Ziobrowski contended that under Ms. Ziobrowski's proposed QDRO, which the trial court approved, she would receive more than one thousand dollars per month rather than the specified amount of $338.30 awarded pursuant to the divorce decree. Ms. Ziobrowski does not state the value of the monthly benefit she will receive under her proposed QDRO. She does, however, state that her proposed QDRO contained "the standard language" that is "the same as in any other GM QDRO."

In *Maxwell v. Maxwell*, No. 01A01-9402-CV-00086, 1994 WL 527134, at *1 (Tenn. Ct. App. M.S. Sept. 28, 1994), a QDRO was entered that was inconsistent with the parties' divorce decree because it allowed the former wife to receive a greater share of the husband's retirement benefits than she was entitled to. On appeal, the court noted that "the QDRO amended, in an impermissible manner, the final judgment, and to the extent it deviated from the judgment, it is void." *Id.* The court determined that the divorce decree became final when it was not appealed, and one party could not reinterpret it in an inconsistent QDRO. *Id.* at *2. The court vacated the QDRO "as being beyond the authority of the Court to grant, since it purports to amend a judgment that had become final more than seven years previously." *Id.*

Similarly, in *Lagrone v. Lagrone*, No. 01A01-9603-CH-00125, 1996 WL 512032, at *2 (Tenn. Ct. App. W.S. Sept. 11, 1996), a QDRO was entered that conflicted with the provisions of an MDA that was incorporated by a divorce decree. This Court found that the QDRO did not conform to the provisions of the final decree of divorce, which had become final long before the QDRO was entered. *Id.* at *3. We then concluded that "the provisions of [the] QDRO would, in effect, modify a property division which is not modifiable once the divorce decree becomes final," and accordingly, we vacated the QDRO and remanded the case to the trial court. *Id.*

In *Whisenhunt v. Whisenhunt*, No. 02A01-9506-CV-00126, 1997 WL 305296, at *2 (Tenn. Ct. App. W.S. June 9, 1997), a QDRO authorized a former wife to receive a greater portion of her former husband's profit sharing plan than the trial court had actually awarded. We modified the QDRO on appeal, limiting the amount of benefits that the former wife would receive to the amount that was ordered by the trial court. *Id.*

In the case before us, the divorce decree awarded Ms. Ziobrowski one-half of a $676.60 monthly benefit, or $338.30 per month, in dividing the marital property. According to Mr. Ziobrowski, the proposed QDRO approved by the trial court allows Ms. Ziobrowski to receive over one thousand dollars per month. He claims that his current benefit under the GM plan has increased because it was consolidated with his Saturn retirement plans, and that he had already paid Ms. Ziobrowski $11,278.17 for her marital share of those plans. Therefore, he claims that Ms. Ziobrowski is not entitled to simply receive one-half of his current GM benefit. Again, Ms. Ziobrowski does not dispute this contention, but simply claims that her proposed QDRO was proper because it contained "standard language" entitling her to one-half of whatever he earned during the marriage. Clearly, though, if the Saturn retirement funds are now part of Mr. Ziobrowski's GM plan and current benefit, standard language allowing Ms. Ziobrowski to receive one-half of his total benefit earned during the marriage would be improper. Ms. Ziobrowski already received her marital

share of the Saturn funds, $11,278.17, at the time of the divorce in 1995. More importantly, Ms. Ziobrowski would be receiving a portion of the monthly benefit that is far in excess of what the trial court actually awarded.

Unfortunately, the record before us contains no evidence from which we can conclusively establish how much of the monthly benefit Ms. Ziobrowski will receive under the proposed QDRO entered by the court. The terms of the plan are not in the record, and Mr. Ziobrowski only alleged in his motion to alter or amend that the proposed QDRO allowed Ms. Ziobrowski to receive more than one thousand dollars per month. At oral argument, his attorney stated that the benefit was now valued at around three thousand dollars per month. We have determined that the final decree of divorce awarded only $338.30 of the monthly benefit to Ms. Ziobrowski. Therefore, the proposed QDRO is void to the extent that it conflicts with the final decree. This case is remanded to the trial court for a determination of the value of the monthly benefit that Ms. Ziobrowski will receive pursuant to the QDRO that was entered, and upon making this determination, the court shall amend the QDRO if necessary to conform to the October 2, 1995 judgment. Ms. Ziobrowski may not receive more than $338.30 of Mr. Ziobrowski's monthly benefit, according to the division of marital property set forth in the memorandum incorporated by the final decree of divorce.

### B.    Attorney's fees on Appeal

Ms. Ziobrowski requested attorney's fees on appeal, claiming that Mr. Ziobrowski's appeal was frivolous and that she should be awarded her fees as the prevailing party. Because Mr. Ziobrowski was successful on appeal, we deny Ms. Ziobrowski's request for attorney's fees.

### V.    CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court and remand for further proceedings. Further, we decline to award attorney's fees to Ms. Ziobrowski. Costs of this appeal are taxed to Appellee, Marcy Hays Ziobrowski, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.