IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 23, 2012 Session

**THOMAS L. LANE v. WANDA S. LANE**

**Appeal from the Circuit Court for Bradley County**
**No. V09658    Hon. J. Michael Sharp, Judge**

**No. E2011-02293-COA-R3-CV - Filed July 26, 2012**

This post-divorce appeal concerns the classification and division of property, namely a products liability settlement and a pension plan. Following the grant of the parties' request for divorce, the trial court classified the proceeds of the settlement and the portion of the pension earned during the marriage as marital property. The court held that husband had dissipated the settlement proceeds without wife's knowledge or consent. The court awarded husband the pension but awarded wife a judgment of $27,520.97 to equalize the division. Husband appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Barrett T. Painter, Cleveland, Tennessee, for the appellant, Thomas L. Lane.

Joshua H. Jenne, Cleveland, Tennessee, for the appellee, Wanda S. Lane.

**OPINION**

**I.  BACKGROUND**

Wanda S. Lane ("Wife") married Thomas L. Lane ("Husband") on December 23, 2006. This was the second marriage for both parties. Wife entered the marriage to Husband with children and the property ("Durkee Property") that she shared with her first husband.

Likewise, Husband entered the marriage to Wife with a son and property ("White Oak Property"). There were no children born of the marriage between Husband and Wife.

Throughout the marriage, Husband worked for Cleveland Utilities ("CU"), while Wife worked for Derby Industries ("DI"). Shortly after the parties married, Husband was hurt while working for CU. He was unable to work from January 2007 until May 2007 and received worker's compensation benefits during that time, along with $15,208.19 in settlement proceeds from his worker's compensation claim. As a result of his injury, the parties filed a products liability claim and received a lump sum settlement of $42,519.82.

The parties maintained separate checking accounts but shared the expenses of maintaining the household. Husband lived with Wife on Durkee Property. Wife, with the help of her daughter, paid the mortgage payment of $542.73. In 2007, Husband, instead of Wife's daughter, remitted half of the mortgage payment to Wife for several months until he assumed full responsibility for the payment in September 2007. In 2008, the parties refinanced Durkee Property and consolidated several debt obligations, including approximately $16,800 owed on Husband's truck, into the new mortgage. As a result of the refinancing, the mortgage increased from approximately $70,000 to $100,282, the monthly payment increased to $740, and the parties received $5,223.08 as a cash settlement. In 2009, the parties refinanced again but did not receive a cash settlement. Instead, the mortgage was increased to $107,894, while the payment was reduced to $669.

Husband filed a complaint for divorce on September 4, 2009, alleging irreconcilable differences and inappropriate marital conduct. Wife denied that she had been guilty of inappropriate marital conduct and filed a counter-claim, alleging that the marriage was irretrievably broken because of irreconcilable differences and that Husband was guilty of inappropriate marital conduct. The parties briefly reconciled but subsequently proceeded with their respective complaints for divorce in 2010. Husband continued to make the mortgage payments for Durkee Property until December 2010.

A trial was held at which both parties testified. Husband, who was 51 years old at the time of the trial, stated that he had worked for CU for 12 years. He said that he and Wife never opened a joint checking account but that they shared some of the household expenses. He paid for gas, both mortgages, the vehicles, the vehicle and homeowner's insurance, and the telephone bill, while Wife paid the electricity and water bill. He recalled that, at times, he did not have enough money to fulfill his debt obligations and that when he asked Wife to help, she refused because she did not have money to contribute. He asserted that he used the money obtained from the first refinancing to pay bills and to fund two family vacations. He said that he assumed the responsibility for the higher mortgage payments after the refinancing but eventually refinanced a second time to reduce the payments.

Husband admitted that Wife cared for him when he was injured and unable to work for several months. Relative to his worker's compensation settlement, he gave his son $1,500 of the money and used the rest of the money to purchase guns[1] and a motorcycle and to pay bills. Relative to the products liability settlement, he admitted that he and Wife were named as plaintiffs in the lawsuit. He explained that they originally intended to file a separate claim for Wife but that "since we settled the way we did they just put it on one." He acknowledged that the settlement agreement did not specify which damages were allotted to him and which damages were allotted to Wife. He asserted that he was the only one injured and that Wife endorsed the check, allowing him to deposit the check. He said that he and Wife did not discuss how to use the money but that he gave Wife $1,500 and used the rest of the money to pay the remaining amount due on his truck and the mortgage on White Oak Property because he had been "making all the payments on everything." He further explained that he owed more money on his truck than Wife owed on her van and that White Oak Property was simply an expense that needed to be paid. He testified that he continued to pay the mortgage for Durkee Property and for Wife's van but that he ceased payment on the mortgage in December 2010 because he no longer lived there. He asserted that he was willing to give Wife $1,800 from his saving account and continue making the payments for Wife's van.

Wife, who was 53 years old at the time of trial, testified that she had been employed at DI for 5 years and that she made $9.50 per hour. She asserted that she did not know how Husband spent the money from the worker's compensation settlement. Relative to the products liability settlement, she recalled that they planned to use the money to pay the remaining amount due on Husband's truck and her van. She asserted that Husband told her the check would take two weeks to "clear" and that when she asked him about the money, he gave her $1,500 and said that the money was gone.

Wife testified that she was unable to pay the mortgage payment for Durkee Property and that she had received a foreclosure notice from the bank. She said that the payment had increased to $817 per month because she was not current with the payments. She explained that the amount she sought in the divorce would assist her in renegotiating the payments with the bank. She admitted that she had not filled out the paperwork to lower the payment.

Following the trial, the court granted the joint request for divorce. As relevant to this case, the court found that Husband used the majority of the equity received from the refinancing of Durkee Property. The court also found that the products liability settlement was marital property but that Husband used "almost $20,000 to pay off his separate/personal debt for [White Oak Property]" without Wife's "knowledge or consent" The court held that

---

[1]Husband explained that he was replacing guns that had been stolen.

given the circumstances, Wife's valuation and division of the marital property, with minor exceptions, was equitable and divided the marital property as follows:

| Item | Value |
| --- | --- |
| **Wife's Assets:** | |
| Durkee Property | $110,000 |
| 2004 Ford Freestar van | $7,545 |
| 32 in flat screen | $200 |
| First Tennessee checking | $600 |
| Credit Union savings | $600 |
| BECU savings | $1,800 |
| Computer desk | $20 |
| Computer | $200 |
| Total | $120,965 |
| | |
| **Wife's Debts:** | |
| Bank of America | $107,000 |
| Belk | $125 |
| Total | $107,125 |
| | |
| **Husband's Assets:** | |
| 2008 Ford F150 | $29,235 |
| 2010 Ford Ranger | $18,830 |
| Kawasaki Vulcan 750 | $2,928 |
| Gun safe | $800 |
| Guns | $800 |
| Knives and swords | $300 |
| BECU checking | $1,000 |
| Retirement Solutions | $1,037.20 |
| Pension | $43,764 |
| Total | $98,694.20 |
| | |
| **Husband's Debts:** | |
| Ford Motor Credit | $13,812.27 |
| BECU | $8,000 |
| Total | $21,812.27 |
| | |
| **Total Net Property to Wife** | $13,840 |
| **Total Net Property to Husband** | $76,881.93 |

In an effort to equalize the division, the court awarded Wife a judgment of $27,520.97. Husband's timely appeal followed.

## II.  ISSUES

We consolidate and restate the issue raised on appeal by Husband as follows:

A.  Whether the court erred in classifying the proceeds of the products liability settlement as marital property.

B.  Whether the court erred in dividing the marital portion of the pension using the present cash value method.

Wife has also raised an issue for our consideration that we consolidate and restate as follows:

C.  Whether Wife is entitled to attorney fees and costs on appeal.

## III.  STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them.  *See* Tenn. R. App. P. 13(d).  The trial court's conclusions of law are subject to a de novo review with no presumption of correctness.  *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

The trial court's classification and division of property is reviewed de novo with a presumption that the trial court's factual findings are correct.  *See Watters v. Watters*, 959 S.W.2d 585, 588 (Tenn. Ct. App. 1997).  Absent an error of law, the court's classification and subsequent division of property will be reversed or modified only if the evidence preponderates against the court's decision.  *Id.*  The trial court has wide discretion in classifying and dividing property. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998).  This court must give great weight to the trial court's decisions in dividing marital assets, and "'we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)).

## IV. DISCUSSION

### A.

Husband contends that the court improperly classified the products liability settlement as marital property. He argues that Wife failed to show that the settlement proceeds were meant to compensate them for his lost wages, medical bills, or damage to marital property. He notes that the worker's compensation settlement reimbursed them for the lost wages and that the products liability settlement proceeds were his separate property. Wife responds that the proceeds were marital property and that the court properly considered the dissipation of the proceeds in the division of the remaining marital property.

Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate or marital property before dividing the marital estate. *See generally* Tenn. Code Ann. § 36-4-121(a)(1); *see Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). Separate property is not part of the marital estate and is therefore not subject to division. *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Separate property is defined as,

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 as amended;

(B) Property acquired in exchange for property acquired before marriage except when characterized as marital property under subdivision (b)(1);

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2). In contrast, marital property includes "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of the filing of a complaint for divorce." Tenn. Code Ann. § 36-4-121(b)(1)(A); *see Larsen-Ball v. Ball*, 301 S.W.3d 228, 233 (Tenn. 2010). Marital property also

> includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

Tenn. Code Ann. § 36-4-121(b)(1)(C). The classification of property as either marital or separate property is a question of fact for the trial court. *Mitts v. Mitts*, 39 S.W.3d 142, 144-45 (Tenn. Ct. App. 2000).

The parties were awarded the products liability settlement while they were married, creating a rebuttable presumption that the property was marital property. Additionally, the check was made payable to both parties and did not differentiate which portion was allotted to each party. *See generally Pearson v. Pearson*, No. E2007-02154-COA-R3-CV, 2008 WL 4735305, at *10 (Tenn. Ct. App. Oct. 27, 2008) (listing the fact that the record did not disclose which portion of a settlement check was allotted to each party as a consideration in classifying the check as marital property). Husband admitted that Wife did not proceed with her individual products liability claim because of the way in which they had negotiated the settlement. We hold that the settlement check represented the amount sought by both parties and ultimately awarded to both parties in fulfillment of each of their products liability claims. Accordingly, we conclude that the products liability settlement was properly classified as marital property and reject Husband's contention that the settlement check was not marital property because it did not specifically include recovery for lost wages pursuant to Tennessee Code Annotated section 36-4-121(b)(1)(C). Likewise, we also conclude that the court did not err in considering the dissipation of the settlement proceeds in dividing the remaining marital property. *See* Tenn. Code Ann. § 36-4-121(c)(5)(A), (B).

B.

The parties agree that a portion of Husband's unvested pension was marital property subject to division and that the calculation of the present value of that portion of the pension was accurate. Husband contends that the court should have used the deferred distribution method in dividing the marital portion of his pension. He asserts that the deferred method was preferable because he would not be eligible to receive the benefits for another nine years.

He notes that his retirement was not likely to occur in the near future, that the pension was the greatest marital asset, and that they had no other cash assets to offset the award. Wife responds that use of the present cash value method was the "most logical way to reach an overall equitable division."

In determining the way in which such assets should be divided, courts are "aided by the use of elastic, equitable approaches." *Cohen v. Cohen*, 937 S.W.2d 823, 831 (Tenn. 1996). The two techniques commonly used in Tennessee are known as the present cash value method and the deferred distribution or retained jurisdiction method. *Id.* "The choice of valuation method remains within the sound discretion of the trial court to determine after consideration of *all* relevant factors and circumstances." *Id.* (emphasis added). Most importantly, an equitable division of marital property must "reflect essential fairness in light of the facts of the case." *Id.* at 832. (citing *Kendrick v. Kendrick*, 902 S.W.2d 918, 929 (Tenn. Ct. App. 1994)).

The present cash value method "requires the trial court to place a present value on the retirement benefit as of the date of the final decree." *Id.* at 831. Having determined the amount of the benefit, the court may then "award the retirement benefits to the employee-spouse and offset that award by distributing to the other spouse some portion of the marital estate that is equivalent to the spouse's share of the retirement interest." *Id.* This method "is preferable if the employee-spouse's retirement benefits can be accurately valued, if retirement is likely to occur in the near future, and if the marital estate includes sufficient assets to offset the award." *Id.* In cases in which the "vesting or maturation is uncertain or in which the retirement benefit is the parties greatest or only economic asset, courts have used the deferred distribution or "retained jurisdiction" method to distribute unvested retirement benefits." *Id.* Using this method, "the court may determine the formula for dividing the monthly benefit at the time of the decree, but delay the actual distribution until the benefits become payable." *Id.* (citations omitted). *Id.* The advantage of this method "is that it allows an equitable division without requiring present payment for a benefit not yet realized and potentially never obtained" and "it equally apportions any risk of forfeiture." *Id.* There are disadvantages as well, namely the court must "retain jurisdiction to oversee the payment." *Id.* However, "[a]n administrative burden should not excuse an inequitable distribution of marital property." *Id.*

Following our review, we agree with Wife that use of the present cash value method was the logical way in which to reach an equitable division of the marital estate. Wife needed an immediate substantial judgment to offset her debt obligations given the continued refinancing of Durkee Property and the consolidation of debts into the mortgage, which benefitted Husband. Additionally, Husband's dissipation of one of the parties' greatest assets, namely the products liability settlement, also supported the decision to proceed with

an immediate valuation of the marital portion of the pension. Thus, a delay of the actual distribution of the benefits would have been inappropriate given the circumstances of the case. Accordingly, we conclude that the trial court did not abuse its discretion in using the present cash value method to equitably divide the marital portion of Husband's pension in light of the facts and circumstances presented in this case.

C.

Wife asserts that Husband's appeal was frivolous and that she is entitled to damages in the form of attorney fees and costs for having to defend against the appeal. Tennessee Code Annotated section 27-1-122 provides for an award of damages, including attorney fees, when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Following our review, we respectfully deny Wife's request for attorney fees on appeal because we do not believe the appeal was wholly without merit and lacking in justiciable issues.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Thomas L. Lane.

_____
JOHN W. McCLARTY, JUDGE